Allen, J.
 

 The defendant cannot be charged for the willful act of its conductors under the provisions of the Revised Statutes making a part of the act entitled “ of the law of the road and the regulation of public stages.” (1 R. S., 695.) That act, first enacted in 1824 and made a part of the revision, makes the owner of every carriage running or traveling upon any turnpike road or public highway for the conveyance of passengers, liable
 
 to
 
 the party injured, in all cases, for all
 
 *124
 
 injuries and damages done by any person in the employment of such owner as a driver, while driving such carriage, to any person, or to the property of any person, and that whether the act occasioning such injury or damage be willful or negligent or otherwise, in the same manner as such driver would be liable. (1 R. S., 696, § 6.) By section 7, enacted at the time of the revision of the statutes, a
 
 “
 
 carriage,” as used in the act, is declared to include stage coaches, wagons, carts, sleighs, sleds, and every other carriage or vehicle used for the transportation of persons and goods, or either.
 

 By this act, the common-law liability of one class of masters for the acts of a single class of their servants was enlarged and extended. Owners of carriages used for the transportation of persons or goods, were singled out and made liable for the willful or tortious acts of one class of their servants, to wit, the drivers of their carriages, leaving the common-law, regulating the liability of masters for the acts of their servants, intact in every other case. The conductor of a street railroad car, is not a driver of a “ carriage ” within the statute for whose willful acts the master is liable.
 

 Notwithstanding the comprehensiveness of the term
 
 “
 
 carriage,” as defined by the statute, it is very doubtful whether it includes a car used for the carriage of passengers over a street railroad. Such a vehicle was not within the spirit of the act, and is not within the general classification and specification of vehicles mentioned. It was not known at the time of the adoption of the law as a vehicle used either for the transportation of persons or goods. But that question is not before us. It is enough that a conductor is not a driver of the ear. He may direct or control the driver, but does not himself drive the vehicle. He controls the movements of the car, but he does not act as driver. There was a conflict of evidence as to the circumstances under which the plaintiff sustained the injury, but the jury have adopted the statements of the plaintiff and her sister-in-law, whose testimony did not differ in any essential particular, and who were the only witnesses to the transaction, except the conductor of the
 
 *125
 
 defendant, whose testimony was disregarded by the jury. The facts proved by the plaintiff were, that she was a passenger in the defendant’s car, late in the evening upon a down trip, and desired to stop at Spring street, and so notified the conductor; that at or about Spring street she rung, or caused the bell to be rung as a signal for the stopping of the car, and passed out on the platform and asked the conductor to stop the car, to which he replied that the car was stopped enough; that she told the conductor she would not get out until the car had come to a full stop, whereupon he took her by the shoulder with both hands and threw her out, and her leg was broken by falling on the pavement. The evidence was that the push was with violence, throwing the plaintiff from the platform over the step on to the pavement, and that the act was intentional on the part of the conductor. The car was in motion at the time, and one of the witnesses testified that it was going faster than on a walk.
 

 It is not denied that the act of the conductor, upon the facts established by the verdict of the jury, was wrongful, for which the plaintiff may have an action against the actual wrong-doer, and also against the defendant, as his employer and master, if the act was authorized by it. It is not claimed by the plaintiff that there was express authority given by the defendant for the commission of this particular trespass. The rule, well established and recognized in all the cases, and to which there are no exceptions, is, that to charge the master for the wrongful acts of the servant, they must have been committed by the express authority of the master, or in his service, and within the scope of the employment and authority of the servant. If an act is done by a servant in the business of the master, and within the scope of his employment, the master is liable to third persons for any abuse of the authority conferred, or injuries resulting from any error of judgment or mistake of facts by the servant, as well as for those resulting from a negligent or reckless performance of his duties. The judgment in
 
 Higgins
 
 v.
 
 The Watervliet Turnpike Com
 
 pany. recently decided by this court, was upon this ground,
 
 *126
 
 and is fully sustained by the authorities cited in the opinion of the court, prepared by Judge Andrews. But the same authorities, as well as the judgment in that case, recognize and reaffirm the equally well settled principle, that, for the willful, wanton or reckless acts of the servant, not committed in the service of the master, and not within the line of his duty or the scope of his employment, the master is not liable. The line separating the acts for which the master is responsible from those for which he is not answerable is not,, in all cases, very well defined, and, in some cases, it may be difficult to distinguish between the two classes of acts. The difficulty, however, is, not as to the principle, but in its application to particular circumstances.
 

 Whenever an injury has been caused by the conduct of a servant in the business of his master, and within the scope of his employment, the master has been held liable, although such conduct may have been tortious. The question of liability does not depend entirely on the quality of the act, but rather upon the other question, whether it has been performed in the line of duty, and within the scope of the authority conferred by the master.
 
 (Seymour
 
 v.
 
 Greenwood, 7
 
 H.
 
 &
 
 N., 355;
 
 Limpus
 
 v.
 
 London Gen. Omnibus Co., 1
 
 H. & C., 526;
 
 Goff
 
 v.
 
 Great Northern Railway Co.,
 
 3 E. & E.,
 
 672.)
 
 When the act of a servant, whether a trespass or otherwise, is without the authority, either expressly conferred upon the servant, or implied from the nature of the employment and character of the duties, causes injury to others, the master is not answerable. It is said that the implied authority in the servant is limited to those acts which the master could himself do if personally present, and if, in the performance of such acts, the servant misconducts himself, the master will be liable for his acts.
 
 (Poulton
 
 v.
 
 The L. and S. W. Railway Co.,
 
 L. R., 2 Q. B., 534.) The case of
 
 Hibbard
 
 v.
 
 New York and Erie Railroad Company
 
 (15 N. Y., 455), was well decided, and the judgment was properly reversed, for errors of the judge at the circuit in his instructions to the jury upon the justification for the expulsion of the plaintiff from the
 
 *127
 
 cars by reason of his refusal to conform to the regulations of the defendant. Some of the expressions in the opinions of the judges, which would exonerate a railroad corporation from liability for excess of force or error of judgment in the performance of an act by a conductor within his general authority, are open to criticism as not in harmony with the later authorities, and would not, probably, be regarded as sound, although they are supported by the earlier cases, and by the elementary authorities.
 
 (McManus
 
 v.
 
 Crickett,
 
 1 East, 106, and the authorities cited.) The Supreme Court of this State, in
 
 Wright
 
 v.
 
 Wilcox
 
 (19 Wend., 343), held, that for willful injury done by a servant, the master was not liable, and adopted the rule of Lord Kenyon, that,
 
 “
 
 when a servant quits sight of the object for which he is employed, and, without having in view his master’s orders, pursues that which his own malice suggests, he no longer acts in pursuance of the authority given him.” The principle is the same, whether the wrongful act of the servant is malicious or merely wanton or reckless.
 

 This court held in
 
 Vanderbilt
 
 v.
 
 Richmond Turnpike Company
 
 (2 Comst’k, 479), affirming 1 Hill, 480, that the owner of a steamboat was not responsible for the willful misconduct of the master in running her against and injuring another steamboat; the court saying that a principal who neither authorizes nor ratifies a willful trespass committed by his agent, is not liable therefor. And yet the general management and running of the steamboat was committed to the master, but the commission of willful or wanton injury to another in the act of running the boat, was not within the scope of his authority as implied from the nature of his employment, and the injury in no sense resulted from the performance of an act in the service or interest of the owner of the boat.
 

 Mali
 
 v.
 
 Lord
 
 (39 N. Y., 381) is decisive of the principle by which this and like cases must be adjudged, and is well supported by the authorities cited by the judge delivering the opinion, and there the general superintendent of the defendant’s business as a merchant, upon suspicion that the
 
 *128
 
 plaintiff had stolen the goods of his employer, caused her to be arrested and searched, and the action was brought against the master for the illegal arrest and imprisonment, and the court held that authority for the arrest by the superintendent of the store, and the clerics could not be implied from their general employment, and the-general principles are recognized that a master is responsible civilly for the fraud, negligence, or other wrongful act of his servant committed in the transaction of his business, but is not responsible for the willful injury committed by his servant while so engaged, unless such injury results from the business transacted by the servant for the master. (And see
 
 Frazer
 
 v. Freeman, 43 N. Y., 566.) In the present case an act was done by the conductor completely out of the scope of his authority, which there can be no possible ground warranted by the evidence for supposing the defendant authorized, and which it could never be right under any circumstances for the defendant to do. 1st. The car was in motion, and for no cause could the plaintiff have been thrust out into the street against her will while the car was in motion. The law forbids it, and the defendant could not lawfully have done it, and therefore no authority could be implied in the conductor to do it. 2d. There is no pretence that the conductor ejected or put the plaintiff from the car, or claimed to exercise such power for disorderly conduct, non-payment of fare, or any other cause. 3d. The act was not in aid and assistance of the plaintiff in leaving the car. She was not in the act of getting off the car, but was standing on the platform, demanding that the car should be fully stopped, and protesting, as she had a right to do, that she would not attempt to .leave the ears while they were in motion. 4th. The act was wanton and reckless, and was committed with great force and violence, such force as to throw the plaintiff clear of and over the step, and on the pavement. It was not in the performance of any duty to the defendant, or of any act authorized by it. It was a criminal act for which the conductor could have been punished criminally as well as made to
 
 *129
 
 respond in a civil action. It was a wanton and willful trespass, and was not the natural or necessary consequence of anything which the defendant had ordered to be done.
 

 When it was found that the plaintiff’s steamboat took fire in the night, while it was fastened to the defendant’s wharf, upon which stood a wooden freight house, but before the freight house was endangered, and while the fire could have been extinguished, the plaintiff’s cable was cut by the defendant’s watchman, and the boat drifted away and was burned, no evidence being given of authority for the act of the watchman, other than such as was implied from his general employment as such in the business of the defendants, the latter were held not liable for the act of the watchman.
 
 (The Thames Steamboat Co.
 
 v.
 
 Housatonic R. R. Co.,
 
 24 Conn., 40.) The case was well considered, and is well supported by the argument of the judge, as well as by authority, and is in accord with the decisions of the courts of this State and of England. The question of liability upon the facts proved by the plaintiff was distinctly presented upon the trial, and decided adversely to the defendant, and an exception taken.
 

 Upon the case made upon the trial by the plaintiff, she should have been nonsuited.
 

 The judgment must he reversed, and a new trial granted, costs to abide event.
 

 All concur except Ciiukch, Ch. J., not voting.
 

 Judgment reversed.