By the Court.—Curtis, J.
The exception the case presents is that of the plaintiff to the dismissal of the complaint, by the court, on the ground that, the evidence showed that the injury complained of *373 was occasioned by the willful and unlawful act of the car-driver, defendant’s servant, and not within the scope of his employment. The case shows that the plaintiff, while driving his buggy through Catharine street, crossed defendant’s track so far that only the rear part of the hind wheels of his buggy remained upon the space occupied by the cars when in motion. At this point his further progress was arrested by a throng of trucks and other vehicles. The defendants’ car soon approached, and the driver, after waiting a moment or two, told the plaintiff to “ get off the track.” The plaintiff asked him to wait until the trucks moved, promising then to move. The driver said “Damn you! if you don’t get off here ; I am late 5 I will get you off some way or other.” The plaintiff said: “You wait a moment. I guess the trucks are moving, and I may go.” The trucks started, and as the plaintiff prepared to move on, the driver started his horses, and the platform of the car hit, or as one of the witnesses says touched, the hind wheel of the buggy, and overturned it, thus causing the injury complained of.
From the evidence, it is apparent that the car-driver may have attempted to pass by the buggy either without hitting it, or else by shoving it around out of his way so he could get by, and that he committed an error of judgment in measuring the distance. This is consistent with his saying to the plaintiff, “ I will get you off some way or other.” He was-late and hurried, and perhaps in his zeal to discharge his duty to his employer, he made the mistake which, caused the injury.
Much stress at the argument was laid by the defendant upon the language of the driver, as indicating willfulness and malice, but that does not seem to-be the necessary construction to place upon it. It indicates haste, and a desire to drive on, and has to be *374 considered in the light of the surrounding circumstances, and a Chesterfieldian request could hardly be expected. It is quite probable if he had used his eyes as strenuously as he did his tongue, he would have been more careful, and the injury to the plaintiff would not have occurred.
• It is claimed that upon the doctrine in the case of Isaacs v. The Third Ave. R. R. Co. (47 N. Y. 122), the complaint was properly dismissed, this being an analogous case. That was a case where, when a female passenger desired to alight from the car, and declined doing so until it stopped, the conductor threw her out upon the pavement, and it was considered that this was his unauthorized, wanton, and willful trespass, and that the defendant was not liable. But this case is not to be interpreted as holding that a defendant is to be exonerated from liability for injuries occasioned by the errors and negligence of his reckless, careless, or unskillful driver, because the driver manifests at the same time that he is ruffianly and brutal. It is nowhere intimated that the employment of car drivers or conductdrs of this latter class would benefit their principals, when questions of- pecuniary responsibility for injuries arise. On the contrary, that case affirms the rule, that for a servant’s act in his master’s business, or within the scope of Ms employment, the master is liable for any abuse of authority conferred, or injuries resulting from errors of judgment, or mistake of facts, or from a negligent or reckless performance,of duties by the servant.
The question to be passed upon here, is whether it should not have been left to the jury to determine as a question of fact if the act of the conductor was willful and malicious, or negligent and reckless, and deemed by him necessary to accomplish the purpose with which he thought himself charged.
. There may be cases so near the line between law and *375 fact that it is difficult to say to which side they belong; but the tendency of courts is to scrupulously watch that the right of a plaintiff, to have a question submitted to a jury should not be infringed upon. The principle in cases like the present is adhered to, that where the fact depends upon inferences to be drawn from the circumstances proved, about which honest men might differ, or the evidence is capable of different interpretations, then it is the plaintiff’s right to have the question submitted to the jury (Hackford v. N. Y. Central R. R. Co., 3 N. Y. 654; Belton v. Baxter, 58 Id. 411; Salter v. Utica and Black River R. R. Co., 58 Id. 631 ; Jackson v. Second Avenue R. R. Co., 47 Id. 274).
If the undisputed propfs in the present case showed that the act of the driver was unauthorized, willful, and malicious, and out of the scope of his employment, it was the duty of the court to dismiss the complaint, and if the question had gone to the jury on such evidence, and they had found a verdict for the plaintiff, it would also have been the duty of the court to set aside such a verdict as unsustained by the evidence. But the case presents this difficulty, that the undisputed facts are consistent with the plaintiff’s claim that Ms injuries resulted from the negligence of the defendant’s servant. They are capable of such interpretation. That inference is fairly to be drawn from them, and though men may honestly differ in their views in respect to them, still it is the province of the jury to pass upon the question, and the right of the plaintiff to have it submitted to them.
We think that the plaintiff’s exceptions should be sustained, the verdict set aside, and a new trial ordered, with costs to abide the event of the ¿ction.
Sedgwick, J., concurred.