## MICHAEL LYNCH, RESPONDENT, *v.* THE METROPOLITAN ELEVATED RAILWAY COMPANY, APPELLANT.

*Railroad company — right of, to detain a passenger failing to produce a ticket — when it is liable for the acts of its employes.*

The plaintiff who had entered one of the defendant's cars at Forty-second street, New York city, was, while attempting to pass out of the station at Rector street, stopped by the gateman who demanded his ticket. Upon being told by the plaintiff that he had purchased a ticket but had lost it, the gateman detained him and finally sent for a policeman who arrested him on the charge of disorderly conduct and refusing to pay his fare, and took him to the station-house where he was detained over night. On the next morning he was examined before a police justice and discharged. The defendant had instructed its gatemen to compel passengers to produce their tickets on leaving its stations.

In an action brought by the plaintiff to recover damages for the false imprisonment:

*Held,* that the detention of the plaintiff at the station and his subsequent arrest on the complaint of the gateman were illegal.

That the defendant was liable for the acts of the gateman.

That the plaintiff was entitled to recover.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

*George S. Hamlin,* for the appellant.

*Charles C. Smith* and *Benjamin Estes,* for the respondent.

DYKMAN, J.:

Plaintiff entered one of defendant's trains at Forty-second street, and left at Rector street. When he tried to pass out of the Rector street station defendant's gateman demanded his ticket. Plaintiff stated he had bought one, but had lost it. He was thereupon detained by the gateman, and finally a policeman was sent for, and on the gateman's charge of disorderly conduct " and refusing to pay his fare," plaintiff was arrested and confined over night. Next morning he was examined before a police justice and discharged.

The theory of the defense is, that the detention in its station was reasonable and under its regulation to compel passengers to produce their tickets, and that for plaintiff's subsequent arrest and imprisonment they are not liable, because their gateman in procuring it acted beyond his employment.

Is a regulation that a passenger shall be detained for failure to pay his fare during a specified time or at the discretion of an employe reasonable? Is it not an imprisonment for debt, with the creditor for prosecutor, tribunal and gaoler, and the right of appeal denied? A few will lose tickets, and the many will not. The defendant may arrogate to 'itself power of detention and hold a threat over its passengers, but it exercises such power at its peril.

The power to eject a passenger from its car and to use force to do it, is one power. Power to detain is power to imprison, dressed in the garb of softer words.

In *Townsend* v. *New York Central Railroad Company* (56 N. Y., 300) the passenger was ejected from defendant's car. There was no detention. And so of the many cases cited by the appellant.

The quotation from *Chilton* v. *London and Croydon Railroad Company* (16 M. & W., 221) is at least two-edged. " This by-law may be insufficient in not having made a traveler, who does not produce his ticket at the end of his journey, liable to a penalty ; but if so, it should be amended and approved by the proper authority. It appears to me that under this plea the sum demanded of the plaintiff was a fare, and not a penalty, so that the defendant has no right to seize or detain him."

In England, railroad corporations are authorized by statute to impose penalties. Passing that consideration it is plain that here the question was of fare and that alone.

The gateman's charge at the police court was " refused to pay his fare." We are now considering the detention, but this goes to show what the gateman was working to secure first and last. Mr. Foster's testimony is conclusive that detention was ordered to enforce payment of fare. No ticket was required to enter the defendant's car, but to leave their station the fare must be paid or a ticket deposited.

The question of defendant's liability for the arrest remains to be considered.

It cannot be doubted that corporations are liable for the tortious acts of servants.

"A corporation is liable to the same extent and under the same circumstances as a natural person for the consequence of its wrongful acts, and will be held to respond in a civil action at the suit of an injured party for every grade and description of forcible, malicious or negligent tort or wrong which it commits, however foreign to its nature or beyond its granted powers the wrongful transaction or act may be." (*N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y., 49.) The doctrine of Judge SELDEN in *Bissell* v. *Michigan Southern, etc., Railroad Company* (22 N. Y., 305) is approved, and that of Judge COMSTOCK in the same case inferentially abandoned.

This at least limits the application of *Mali* v. *Lord* (39 N. Y., 384) to this case. It is not enough that the masters, if present, would not be authorized to do what is complained of.

That the servant's acts complained of was not contemplated, foreseen or intended by the master does not excuse him. If he put his servant in a position with possible exigencies, and commit to his discretion what act any contingency may call for, the master is still liable, though the servant's discretion, ill regulated and prompt measures are beyond the scope of his employment. If the servant act for his master, though his act be ill-advised, in short up to and until he makes his position and employment a pretext for the gratification of his pleasure, business or revenge, the master is liable. (*Rounds* v. *Del., L. & W. R. R. Co.*, 64 N. Y., 129.)

"It seems to be clear enough from the cases in this State that the act of the servant, causing actionable injury to a third person, does not subject the master to civil responsibility in all cases where it appears that the servant was at the time in the use of his master's property, or because the act, in some general sense, was done while he was doing his master's business, irrespective of the real nature and motive of the transaction. * * * If he (the servant) is authorized to use force against another when necessary in executing his master's orders, the master commits it to him to decide what degree of force he shall use, and if through misjudgment or violence of temper he goes beyond the necessity of the occasion and gives a right of action to another, he cannot, as to third persons, be said to have been acting without the line of his duty or to

have departed from his master's business. If, however, the servant under guise and cover of executing his master's orders and exercising the authority conferred upon him, willfully and designedly, for the purpose of accomplishing his own independent, malicious or wicked purposes, does an injury to another, then the master is not liable." (*Rounds* v. *Delaware, etc., R. R. Co.*, 64 N. Y., opinion, 136.) But if a servant goes outside of his employment, and without regard to his service, acting maliciously, or in order to effect some purposes of his own, wantonly commits a trespass or causes damage to another, the master is not responsible. (*Mott* v. *Consumers' Ice Co.*, 73 N. Y., 543.) When a servant quits sight of the object for which he is employed, and without having in view his master's orders, pursues that which his own malice suggests, he no longer acts in pursuance of the authority given him. The principle is the same whether the wrongful act of the servant is malicious or merely wanton or reckless. (*Isaacs* v. *Third Avenue R. R. Co.*, 47 N. Y., 122.)

The trial judge charged that to give plaintiffs their verdict the jury must find that Donahue, the gateman, was authorized to detain passengers; and with reference to the arrest, "if you think Donahue acted here without any authority whatever from the company, then your verdict shall be for the defendant." This is as strongly in defendant's favor as the trial judge could rightly charge. The jury must then have been satisfied that the gateman had his employer's interests at heart, and that the defendant placed him at his gate to force the deposit of a ticket with him by each departing passenger and committed to his discretion the limits of compulsion. The evidence justifies both conclusions.

The judgment must be affirmed, with costs.

BARNARD, P. J., and GILBERT, J., concurred.

Judgment and order denying new trial affirmed, with costs.