By the Court.—Freedman, J.
The defendant is a common carrier of passengers for hire. The action is for the wrongful ejection of the plaintiff from one of the cars of the defendant. The defense is in substance a general denial. At the trial, the plaintiff, who, at the time of the occurrence was a boy of about twelve years -of age, showed that he got on the car in Fifty-ninth street, between Seventh and Eighth avenues, and remained on the rear platform, and then and there paid to the conductor the customary fare of five cents ; that. when the car reached "a certain point in said street, between First and Second avenues, the conductor again -demanded fare ; that the plaintiff informed him that he had paid it; that in said statement he, the plaintiff, was corroborated by a friend who stood near him ; but that the conductor claimed that the statement was untrue, and that the fare had not been paid; and that, upon the refusal of the plaintiff to pay again, the conductor threw *98 both the plaintiff and his friend off, while the car was in motion. The conductor testified in - substance that plaintiff had not paid his fare; that he ran after the car for some distance, evidently intending to steal a ride ; that he boarded it between First and Second avenues ; that, upon fare being demanded, plaintiff refused to pay; that he was then ordered off, and left without having been touched by the conductor. If the jury had believed this version of the conductor, their verdict would have of necessity been for the defendant. But, as they found for the plaintiff, they must have disregarded it, and upon plaintiff’s testimony found either that plaintiff paid his fare, and that consequently the conductor had no cause whatever, or else, that having cause, in consequence of non-payment, the conductor acted with unnecessary violence. It becomes important, therefore, to consider whether the jury were properly instructed.
Upon looking at the exceptions taken by the defendant to the charge and refusals to charge, two important questions present themselves—the first relating to the question of willfulness, and the second to the question of damages.
Upon the first, the learned judge who presided at the trial, charged:
“ I charge you, gentlemen of the jury, that the defendant is responsible for the acts of its servants, within the general scope of the servant’s employment, while engaged in defendant’s business, if such acts are done with a view to the furtherance of that business and of the defendant’s interests, even if they are done negligently, wantonly or willfully, and although the servant departed from the private instructions of the master, abused his authority, and was reckless in the performance of the duty; it is for you, however, to say whether these acts were within the general scope of the employment of the conductor. ”
This, though excepted to, was proper enough,as far *99 as it went, but it did not enlighten the jury as to what willful acts were, as matter of law, not within the scope of employment. To obviate the omission, the defendant’s counsel requested the court to charge:
“If the jury believe that the conductor acted willfully, and for personal motives committed an assault upon the plaintiff, the verdict must be for the defendant. ”
The court refused so to charge, to which refusal the defendant duly excepted.
This exception is well taken; for although a principal is always held liable for the acts, willful as well as negligent or reckless, of his servants, if done or committed in the course of their employment and within the scope of their authority, although without orders, he is not liable for such of their acts as are committed clearly outside of such employment and authority. (Isaacs v. Third Ave. R. R. Co., 47 N. Y. 122; Mott v. Consumer’s Ice Co., 73 Id. 543 ; Hughes v. New York and New Haven R. R. Co., 36 Super. Ct. 222).
If the plaintiff was thrown from the car against the hub of a wheel of a coal-wagon, while the car was in motion, as claimed by him, it was a tortious act on the part of the conductor, whether plaintiff was a passenger or a trespasser, for, though he may have been a trespasser, the conductor had no right to eject him under circumstances and in a manner which involved a risk of life or limb. In either aspect, the conduct of the conductor was brutal and wanton. Although, therefore, the conductor may be assumed to have had implied authority to remove trespassers in a lawful manner, and although the defendant, as matter of law, is liable for any abuse of that authority, if committed in its services through the commission involved a breach of duty which the conductor owed to the defendant, yet, as matter of fact, the conductor may have used this authority as a mere cover for accomplishing an independent and wrongful purpose of his own. Hence this was *100 a question to be determined by the jury (Rounds v. Delaware, L. & W. R. R. Co., Ct. of Appeals, Nov. 22, 1881). The defendant, therefore, had a right to insist that the jury should consider the question whether, under the circumstances of this case, the conductor did not go outside of his employment, and, without regard to his service, act maliciously or to effect some purpose of his own.
The refusal to charge as requested consequently constituted error, and this error does not appear to have been cured or obviated by other parts of the charge.
Upon the question of damages the jury were properly instructed as to the elements constituting compensatory damage, but as to exemplary damages they were charged that if they found that the conductor acted with a reckless disregard for human ¡life, they were at liberty to find a verdict for such an amount, up to the amount claimed, which was $5,000, as would punish the defendant and act as a deterrent for such acts in the future. This instruction would have been appropriate if the action had been against the conductor (though even he, under the decision of the court of appeals in Hamilton v. Third Ave. R. R. Co., 53 N. Y. 25, would not have been liable to' that extent, if in fact he committed no intentional offense); but as against the defendant it was erroneous. True, a corporation is no more exempt from exemplary or punitive damages in a proper case than any other principal (Caldwell v. New Jersey Steamboat Co., 47 N. Y. 282). But a principal is not liable to that extent in every case in which the agent or servant is. The question of liability in exemplary damages, it is now well understood, turns largely on the motives and the moral culpability of the wrongdoer, and before such damages can be inflicted upon the principal, in addition to compensatory damages, it must appear affirmatively, either that he authorized the commission of the wrong or participated *101 therein or ratified it, or that he had reasonable notice of the bad habits of the servant, or that he left an inexperienced servant without control or supervision when he could and should have exercised a personal control and supervision (Caldwell v. New Jersey Steamboat Co., 47, N. Y. 282; Field on Damages, § 85, and cases there cited).
None of these qualifications were made by the learned judge below : nor was there any evidence which authorized the submission of the question of exemplary damages to the jury. ' It may be suggested that the verdict is so small that after all the jury may be assumed to have given only compensatory damages. This is by no means clear. At any rate, as the error first above stated calls for a new trial, it would serve no useful purpose to determine with precision whether the defendant was not prejudiced by the second.
The judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide the event.
Russell, J., concurred.