CAGNEY v. MANHATTAN RY. CO.

(*City Court of New York, General Term.* September, 1888.)

1. CARRIERS—OF PASSENGERS—TORTS OF SERVANTS—EXEMPLARY DAMAGES.
Plaintiff purchased a ticket for a ride on defendant's elevated railroad, and, without the knowledge of the gateman, deposited it in the canceling box. The gateman, not seeing the ticket deposited, refused to allow plaintiff to get aboard the train, although the ticket agent, the gateman's superior in authority, said he had sold plaintiff a ticket and told the gateman to let him ride. Unable to secure a train without repayment, plaintiff walked home. Many people were present, and plaintiff was apparently much mortified at the imputation of attempting to ride without payment. *Held*, that defendant was liable for both actual and exemplary damages, although caused by the gateman's own malicious act, as by the contract the carrier is liable for the malicious acts of its agents within the line of their duty.[1]

2. DAMAGES—FOR PERSONAL INJURIES—EXCESSIVE.
A verdict for $500 damages in such case is not excessive.[2]

Appeal from trial term.

Action by Timothy J. Cagney against the Manhattan Railway Company, for wrongfully refusing to allow him to ride on its road. Verdict and judgment at trial term for plaintiff, and damages assessed at $500. Defendant appeals.

Argued before NEHRBAS, McGOWN, and PITSHKE, JJ.

*Davies & Rapallo,* for appellant. *Wm. M. Lyddy,* for respondent.

PITSHKE, J. The plaintiff, late in the evening, purchased a ticket for a passage on the Manhattan Elevated Railway. This ticket, he swore, he deposited in the canceling box, and then stood on the station platform, awaiting the arrival of a train to take him to his home, uptown. The suit is for damages for an aggravated breach of the defendant's duty, as a passenger carrier,

---

[1] Under the *Georgia* Code, a railroad company is liable in damages for the wrongful homicide of a customer by the company's depot agent, in the latter's office, while the customer was lawfully there, transacting railroad business with the agent, Christian v. Railroad Co., 7 S. E. Rep. 216; but is not liable in exemplary damages for injuries caused by the malicious acts of its agents in running a train, unless such acts were authorized by the company, or subsequently ratified by it. Railroad Co. v. Moore, (Tex.) 6 S. W. Rep. 631. A passenger purchased a ticket of the authorized agent of a railroad company, believing it to be genuine, which facts he stated to the conductor. Held, that the conductor was bound to accept such statements as true until they were proven otherwise, and the company was liable in damages for the assault of the conductor in attempting to eject the passenger. Hufford v. Railroad Co., (Mich.) 31 N. W. Rep. 544. See, as to the liability of common carriers for wanton assaults committed by their agents on passengers, and as to the liability in general, of masters for the torts of their servants, committed in the scope of the latter's employment, Williams v. Car Co., (La.) 3 South. Rep. 631, and note; Id., 4 South. Rep. 85; Railroad Co. v. Wood, (Ind.) 16 N. E. Rep. 197; Harris v. Railroad Co., 35 Fed. Rep. 116, and note; McCord v. Telegraph Co., (Minn.) 39 N. W. Rep. 315, and note; Cain v. Railway Co., (Minn.) Id. 635, and note.

[2] As to the measure of damages in actions for malicious torts, see Clarke v. Improvement Co., 35 Fed. Rep. 478; Fotheringham v. Express Co., 36 Fed. Rep. 252.

to carry him to his destination, with safety and protection to plaintiff from injury by any of its servants, in that said breach was accompanied by an unwarranted assault, the plaintiff's fare having been duly paid for his passage. Upon the trial the defendants admitted that the plaintiff had bought and paid for his ticket to ride. The main contention was whether the plaintiff, after having purchased such ticket, had deposited it in the canceling box. The gateman at the time was several feet away from the plaintiff's side of the box, and had his back turned to plaintiff as the latter passed by the box. From where the gateman was standing when plaintiff passed the box he could not see the plaintiff drop a ticket into it. After the plaintiff had passed by the gateman walked around to the box and looked into the box, and saw no ticket there, and he inferred that the plaintiff had not deposited any therein; and he stopped plaintiff from getting on the train then arrived. The gateman had been standing near the box, away from the plaintiff, with his (said gateman's) hand resting on the handle of the box, which drops the tickets out of sight. The gateman was under the orders of the ticket agent, who was "boss" of the station. When plaintiff was thus hindered from reaching a train the dispute between him and the gateman was brought before the ticket agent, who thereupon recognized the steel ring on plaintiff's hand, and told the gateman that he had sold to plaintiff a ticket, and he also directed the gateman to let the plaintiff ride on the cars. Notwithstanding this, the gateman again refused repeatedly to let this plaintiff ride, because he did not see any ticket. As the jury by the verdict has found, the plaintiff was then again pushed back a second time by the gateman, rudely and forcibly, contrary to the ticket agent's information and instructions. There were many people on the platform at the occurrence, and seeing the same in part; and the plaintiff thereby was much chagrined and greatly mortified, apparently, and became much excited over the implication, at first, that he had endeavored to steal a ride. Unable to secure a train at the station without repayment, the plaintiff was obliged to leave the station and to descend to the street for the purpose of traveling home. There was nothing unusual in plaintiff's appearance on the occasion in question. The gateman insisted he would not let the plaintiff ride until he saw a ticket deposited, and claimed that such was his duty to do.

The law on the subject is well settled. Wherever an injury has been caused by the conduct of a servant in the business of his master, and within the scope of his employment, the master is liable, though the conduct was tortious. The question of the master's liability does not depend entirely on the quality of the act, but rather on the other question, whether it has been performed in the line of duty and within the scope of the authority conferred by the master. Where the act of a servant, whether a trespass or otherwise, is without the authority conferred from the nature of the employment and character of the duties, the master is ordinarily not answerable. It is said, the implied authority in the servant is limited to those acts which the master could himself do, if personally present; and if, in the performance of such acts, the servant misconducts himself, the master will be liable for his acts. And the master is not exonerated from liability for excess of force or error of judgment, in the performance of an act by the servant, within his general authority. *Isaacs* v. *Railroad Co.*, 47 N. Y. 126, 127; *Steam-Boat Co.* v. *Railroad Co.*, 24 Conn. 40; *Mali* v. *Lord*, 39 N. Y. 381. But the rule ordinarily relieving a master from liability for the servant's own malicious injury to others by him inflicted, when not acting within the scope of his employment, does not apply as between a common carrier of passengers and a passenger. Such a carrier undertakes, by implication of law, to protect the passenger against any injury arising from the negligence or willful misconduct of its servants while engaged in performing a duty which the carrier owes to the passenger. It is the carrier's failure to carry safely and without injury that constitutes the cause of action, and it is no defense to say that such failure was the result of

the willful or malicious act of the servant. A rule which should exonerate the carrier when the injury was the result of an intentional act of the servant would lead to most absurd results. The carrier selects his own servants and agents, and must be held to warrant that they are fit to be trusted by the passenger in every way, as well as skillful and competent. And this is so, whether the wrong by the servant of a passenger carrier is through negligence or the servant's malice. *Stewart* v. *Railroad Co.*, 90 N. Y. 588, 592, 593. Such action against the passenger carrier is a cause not *ex contractu*, but in tort, as a violation of duty. *Catlin* v. *Adirondack Co.*, 20 Hun, 22. Corporations are, of course, to be treated precisely like individuals in such controversies. *Wilds* v. *Railroad Co.*, 24 N. Y. 441; and the recovery may be not only for compensatory, but, in a proper case, also for exemplary damages, in like manner as if the master were acting as the servant did. Sedg. Dam. (6th Ed.) 571, note; *Caldwell* v. *Steam-Boat Co.*, 47 N. Y 282. It is undeniable that the gateman would have been, under the circumstances proven in this case, liable for exemplary damages, were he sued individually. His conduct was recklessly willful, wanton, and unjustifiable, after having been properly informed by the "head" of that station of the full payment of the fare, and directed therefore to allow the passenger into the cars, and, the prevention from boarding the train and the unlawful assault being repeated, in the face of all assurances, and while such gateman continuously merely insisted he had not seen the ticket deposited, which, at most, was only evidence of a due payment of fare, and that having been actually paid, as admitted on the trial, and by the "boss" of the station at the occurrence. Of course, exemplary damages are likewise also recoverable against said servant's superior, (this defendant,) a passenger carrier, though the servant acted in the manner shown herein, either maliciously, or actually or ostensibly within his employment. The verdict is consequently not assailable as given by way of punitory damages. *Gravel Road Co.* v. *Gause*, 40 Amer. Rep. 227, note; *Rounds* v. *Railroad Co.*, 64 N. Y. 129; *Mott* v. *Ice Co.*, 73 N. Y. 543. The jury could herein adjust the award of damages to the good faith or bad faith of the servant's actions, whether independent or on behalf of defendant. Field, Dam. § 73; Wood's Mayne, Dam. 501, note; *Yates* v. *Railroad Co.*, 67 N. Y. 103.

The verdict was not excessive, as mental suffering, indignity, and insult were involved in the occurrence in question. These may be taken into account in measuring compensatory damages for actual injury inflicted. *Hamilton* v. *Railroad Co.*, 53 N. Y. 28; Sedg. Dam. (6th Ed.) 118. The law has not laid down what shall be the measure of damages on such cases of tort. And it cannot be said that the verdict herein was glaringly extreme and improper or unreasonable beyond measure. Particularly, as the evidence herein allowed a punitory verdict. Field, Dam. § 85; *Huckle* v. *Money*, 2 Wils. 206; Field, Dam. § 73; 1 Grah. & W. New Trials, 425, 426. The verdict rendered appears plainly to be only for actual injury.

The exceptions below were respectively without merit. The request to charge which was refused and excepted to, as delivered, was inappropriate, for its assuming certain disputed facts, warranting punitory damages, to be out of the case, which really were a matter for the jury's deliberation. *Silver Plate Co.* v. *Green*, 72 N. Y. 22, 24; Baylies, New Trials, 183. And the application to dismiss the complaint as against the defendant corporation was properly denied. The judgment and order appealed from must be affirmed, with costs.

NEHRBAS and McGOWN, JJ., concur.