(43 Misc. Rep. 125.)

### CONLIN v. BOARD OF EDUCATION OF CITY OF NEW YORK.

(Supreme Court, Trial Term, Kings County. March, 1904.)

1. MUNICIPAL EMPLOYÉ—DISABILITY TO PERFORM SERVICES—RIGHT TO RECOVER COMPENSATION.

    A carpenter employed by the board of education under the civil service rules of the city of New York was reappointed by it under a resolution that he receive per diem wages for "actual service." During a period of 18 months, while he was recovering from personal injuries sustained from a malicious assault of a fellow servant, his name was kept on the books and pay rolls of the board, but he never reported to the board during that time, or demanded pay, and there was entered on the pay roll opposite his name the words "Absent," "No Time." *Held*, that he could not recover from the board wages for the time of his absence.

  Action by James F. Conlin against the board of education of the city of New York to recover wages. Judgment for defendant.

  Addison S. Sanborn and Michael F. O'Brien, for plaintiff.

  John J. Delany, Corp. Counsel (Jerome W. Coombs, of counsel), for defendant.

  FORBES, J. This is an action brought by an employé of the defendant corporation to recover the sum of $1,381.65, with interest thereon from the commencement of said action on the 22d day of October, 1901. It is alleged by the plaintiff that on or about the 11th day of July, 1899, he was employed by the defendant corporation as a carpenter, and was duly and regularly appointed by the defendant corporation as classified in Schedule G of the rules and regulations of the civil service commission of the city of New York. Prior to the 11th day of July, 1899, his name was placed upon the books of said corporation, and he continued most of the time, from the date of his appointment, in the service of said corporation, under rules 4, 42, and 64 of said civil service commission. On or about the 24th day of April, 1900, while he was performing labor with another employé, who was engaged in building a fence around the boys' high school in said borough, plaintiff was willfully, wrongfully, and unlawfully assaulted and struck on the head with a wood ax by Michael Kehoe, a fellow workman and co-servant, then and there in the employ of the defendant corporation. Plaintiff was subsequently taken to St. John's Hospital. The evidence shows that he continued in a hospital from the 24th day of April, 1900, until March, 1901. Plaintiff was unable to perform any labor for said corporation until on or about the 12th day of September, 1901, when plaintiff made an application to the superintendent of said defendant corporation to be taken back into the employment of said board. At the time of making said application plaintiff was told by the foreman, Mr. Dillon, that he was glad he was getting better, and he said to him not to be in a hurry, which he thought strange. He said plaintiff's name was not taken off the book, and plaintiff's pay sheet was made up the same as all the rest of the men, but that it was marked "Not Present." Soon thereafter, in the month of September, he was ready and willing to return to his work under said contract. In fact, from the 24th day of April, 1900, to

the 12th day of September, 1901, plaintiff performed no services at all for the department of education. During the time of his employment prior to the assault plaintiff had been sent from place to place on different buildings, and had been paid for the work which he actually performed at the rate of $3.25 per day, prior to October 24, 1900. On the 24th day of October, 1900, plaintiff's wages were advanced to $3.-30 per day.

This action is brought to recover plaintiff's per diem wages during the time of his disability to perform manual labor. The action is properly brought against the board of education, since the wages to be paid come out of the general repair school fund. Greater N. Y. Charter, Laws 1901, p. 1, c. 466; Gunnison v. Bd. Education, 176 N. Y. 11, 68 N. E. 106. It is conceded, if the plaintiff is entitled to recover in this action, he is entitled to recover $1,381.65, with interest thereon from the time of the commencement of this action. The defendant corporation, while admitting that plaintiff's name was still standing upon its books in its list of workmen, asserts that the plaintiff is not entitled to recover except for labor which was actually performed by the plaintiff for the defendant corporation. It is conceded that the only reports made to the labor clerk of the various civil service commissions concerning the plaintiff were as follows:

"First. Report of his employment on the 29th day of December, 1895. Second. Report of his discharge May 1, 1902. Third. Report of his reappointment August 8, 1902. Fourth. Report of his discharge December 29, 1902."

The question to be determined is the one of plaintiff's right to recover wages during the period of his absence from work from April 24, 1900, to September 12, 1901. It is conceded that during this period he was not formally discharged; nor was he notified that he was not to receive pay in the interim. It is also conceded that the plaintiff worked every day when he reported to the defendant corporation for work, before said assault, and after September 12, 1901. The journal of the board of education dated July 1, 1898, page 371, shows the following resolution:

"Resolved, the following named persons, formerly employed in the Building Bureau of the School Board for the Borough of Brooklyn, discharged on June 30, 1898, be and they are hereby reappointed, to receive the same rate of wages for actual service and to be paid from the general repair fund. Said employment to terminate September 15, 1898."

In the list of names under that resolution appears the name of James Conlin, carpenter, $3.25 per day. On the 28th day of December, 1898, a resolution was adopted continuing said employment during the pleasure of the committee on buildings, to be paid from the general repair fund for actual service at the rate of wages set opposite their names. In this resolution also appears the name of the plaintiff, James Conlin, carpenter, at $3.25 per day. The minutes of the committee on buildings of the board of education for 1900, page 426, show that under the date of May 28, 1900, a communication was received from Deputy Superintendent Ross, deputy of the borough of Brooklyn, forwarding a communication that on the 24th day of April, 1900, Michael Kehoe, laborer, was accused of having assaulted James Conlin, and the proceedings of said trial show that he was convicted of said

offense. On page 540 of said minutes it is shown that said Kehoe was found guilty, and that he was discharged from the employ of the department, with the approval of the board. At the close of the evidence in the case at bar appears the following stipulation:

"It is admitted that between April 25, 1900, and September, 1900, the plaintiff's name appeared upon the pay rolls of the board of education, marked 'No Time,' and that since September 12, 1901, he was compensated at the rate of $3.30 per day."

Presumptively, the plaintiff was unable, as the result of said injuries, to perform his accustomed manual labor under the employment in which he was formerly engaged by the defendant corporation.

It must be conceded that the plaintiff was in no sense an officer of said corporation, and therefore his claim does not come within the rule that while laboring under physical disability his pay continues. People ex rel. Ryan v. French, 91 N. Y. 265; O'Leary v. Bd. Education, 93 N. Y. 1, 45 Am. Rep. 156. Nor does he occupy the relation to the defendant corporation which a policeman occupies to a city government, entitling him, upon notice of the disability, and reporting from time to time to the department, to compensation during his illness; since a policeman's relation to the city government is analogous to that of a public officer. O'Hara v. City of New York, 33 Misc. Rep. 53, 66 N. Y. Supp. 909. The same rule is held in relation to a dockmaster. Alsberge v. City of New York, 75 App. Div. 360, 78 N. Y. Supp. 145. Also to a teacher in a public school. Steinson v. Board of Education, 165 N. Y. 431, 59 N. E. 300, affirming 49 App. Div. 143, 63 N. Y. Supp. 128; Murphy v. Board of Education, 87 App. Div. 277, 84 N. Y. Supp. 380. It is possible that, had the plaintiff reported to the defendant his condition from time to time, and the department had acquiesced in his exemption from labor, there might be some force in the position that he would be entitled to pay, at least for a reasonable time, upon the ground of waiver, as in the case of the uniformed force of a street department. Downs v. City of New York, 75 App. Div. 423, 78 N. Y. Supp. 442; Driscoll v. City of New York, 78 App. Div. 52, 79 N. Y. Supp. 479. There is no evidence in this case that from the time of his injury, April 24, 1900, down to the 12th day of September, 1901, he ever reported to the defendant corporation, or any of its officers; and, while his name was continued on the employment record, his absence was noted opposite his name; and this situation is inconsistent with the probability that the department acquiesced in or consented to his absence as a wage-earning employé. This of itself is sufficient to create a suspension of the relation of employer and employé until he presented himself again for work. Nor was the plaintiff in the position of an employé unlawfully discharged from service, so as to create a breach of contract. Steinson v. Board of Education, supra; O'Hara v. City of New York, 46 App. Div. 518, 62 N. Y. Supp. 146, affirmed in 167 N. Y. 567, 60 N. E. 1117; Van Valkenburgh v. Mayor, 49 App. Div. 208, 63 N. Y. Supp. 6; Holt v. City of New York, 35 Misc. Rep. 642, 72 N. Y. Supp. 201. The trend of authorities is against the rule of recovery of compensation for services which have not been actually performed, unless there has been a breach of contract. Especially is this the rule in those cases where the class of

labor must be performed by others employed during the time of the employé's disability. Terhune v. Mayor, 88 N. Y. 247. This rule holds good even as to a public officer suspended, or superseded by another. Higgins v. Mayor, 131 N. Y. 128, 30 N. E. 44;. Sullivan v. Mayor, 135 N. Y. 647, 32 N. E. 646; Demarest v. Mayor, 147 N. Y. 203, 41 N. E. 405; Graham v. City of New York, 167 N. Y. 85, 60 N. E. 331. The memoranda entered on the pay rolls opposite the plaintiff's name, "Absent," "No time," must be held as indications that the plaintiff was relieved from duty; and, for the purpose of drawing a per diem compensation, it must be held as equivalent to a discharge, suspension, or relief from duty upon the theory of "no work, no pay." Cook v. Mayor, 9 Misc. Rep. 338, 30 N. Y. Supp. 404, affirmed in 150 N. Y. 578, 44 N. E. 1123, Mem. This doctrine is sustained in Graham v. City of New York, 167 N. Y. 88, 60 N. E. 331. The case at bar does not fall within Devlin v. Mayor, 41 Hun, 281, which was a case of a bookkeeper who was working on a salary. He reported from time to time, and his name was kept on the monthly pay rolls, although a line of red ink was run through the words, "Absent all the month, sick, without pay." The fact that Devlin was discharged was never communicated to him, and there it was held that he was entitled to his salary, upon the theory that the omission to notify him, upon his frequently reporting at the office, was a circumstance from which he might well infer that his leave of absence was continued by consent, based upon the principle laid down in O'Leary v. Board of Education, supra.

In the case at bar an additional element enters into the right to recover. The resolutions introduced in evidence on behalf of the defendant show that compensation was to be given only for actual service performed, and it was by the resolutions that the employment and reappointment of the plaintiff were authorized and continued by the defendant. Murphy v. Board of Education, 87 App. Div. 277, 84 N. Y. Supp. 380. Independently of those resolutions, I think that it is clearly against public policy, and beyond the authority of the board of education, to place any day laborer upon its pay roll (conceding that to be the situation in this case); keep his name there for nearly a year and a half, while that laborer is under absolute disability to perform any work at all, and during which time he has never reported to the board; and, so far as the evidence shows, he had never demanded pay during that period. The rule has always been in force that the illness and disability of a party to perform his contract for personal services is a valid excuse for suspending payment of wages, and may justify an absolute discharge. In my judgment, a contract by the defendant corporation to pay wages under those circumstances would be absolutely void, and could only be enforced against the individual personally making such a contract, based upon some valid consideration moving between the parties. This man was not injured nor disabled by the defendant corporation, or through its negligence, but he was injured by the unlawful and willful act of a fellow servant, not in the performance of his duty to the corporation, but in violation of that duty, and outside of his employment. Levy v. Ely, 48 App. Div. 554, 62 N. Y. Supp. 855; Isaacs v. Third Ave. R. R. Co., 47 N. Y. 122,

7 Am. Rep. 418; Mott v. Consumers' Ice Co., 73 N. Y. 543; Craven v. Bloomingdale, 171 N. Y. 439, 64 N. E. 169, reversing 54 App. Div. 266, 66 N. Y. Supp. 525. There was no evidence to show that the servant injuring plaintiff was an incompetent or improper servant, nor that the master had any notice that he was not a perfectly proper man for the service. The complaint must be dismissed, and judgment is ordered in favor of the defendant, with costs.

Complaint dismissed, and judgment ordered in favor of defendant, with costs.