CESRINA FRASER and GEORGE C. BINGHAM, Administratrix and Administrator of JAMES L. FRASER, deceased, Respondent, *v.* LEMUEL N. FREEMAN, impleaded, etc., Appellant.

A principal is not liable for the malicious and willful act of his servant. done without his direction or assent, although while in his employment. Where the plaintiff's intestate was shot and killed by M., while in the employment of the defendant, and while the defendant, together with M. and another servant, were endeavoring under claim of right, to enter upon the premises of the intestate, and there was no evidence that the fatal shot was fired by the express direction or assent of the defendant.—*Held* (CHURCH, Ch. J., and FOLGER, J., *contra*) in a civil action brought by the plaintiff under the statute to recover damages from the defendant for causing the death of their intestate, it was erroneous for the court to refuse to charge the jury, that if they believed that M. fired the shot with the premeditated design to effect death, the defendant was not liable for the act.

(Argued January 19th and decided February 9th, 1871.)

APPEAL by the defendant, Freeman, from a judgment of the General Term of the Supreme Court, in the first district, in favor of the plaintiff, rendered on the verdict of a jury.

The action was brought against the appellants, Freeman, Michael Ryan and Thomas Mullady, to recover damages for the death of James L. Fraser, alleged to have been caused by the wrongful acts of the defendant, and came on for trial (Freeman alone defending) before Mr. Justice CARDOZO and a jury at the New York circuit, in May, 1868, and the plaintiffs recovered.

On the trial the evidence tended to show the following to be the facts:

In December, 1864, the appellant, Freeman, and one Robertson, his then co-partner, rented to James L. Fraser and others "the first or ground floor of the building now known and designated as No. 186 Fulton street, in the city of New York," reserving the right of way to and from the basement, also one of the vaults, during business hours, and the use of the water closet.

The floor was used as a restaurant by the tenants, for a time, under the firm name of Fraser, Farrington & Co. James L. Fraser, the plaintiff's intestate, soon succeeded this firm, and on September 5th, 1865, Fraser assigned his interest to one John H. Waters. Subsequently Waters transferred to Fraser, who was the actual occupant of the premises on the 5th and 6th days of July, 1866.

On the afternoon of the 5th of July, 1866, Mullady and Ryan, by direction of some one having authority in the firm of Freeman & Robertson, went to No. 186 Fulton street for the purpose of lowering some cotton machinery into the basement of the building. While thus engaged, Waters, the predecessor of Fraser, told Fraser not to allow them to lower the machinery, and orders were given to stop it. Thereupon the hoister was cut, and some words passed between Mullady, Ryan, Waters, Fraser and other parties on the sidewalk. The machinery intended to be lowered was placed for the night in a neighboring store and the parties separated.

On the morning of the 6th of July, Freeman, Ryan & Mullady went to No. 186 Fulton street for the purpose of lowering the machinery into the basement. When they arrived there it was found that the grating over the dummy (used in lowering the machinery) was locked. Freeman wanted something to break the lock with, and Ryan obtained a crowbar from Beebe & Son, next door. With this instrument Freeman broke the lock on the grating and used it to raise the grating up. Freeman then went into the store to go down into the basement, to see the condition of things there, and was forbidden by Fraser to go down. He went down, however, and then returned and commenced putting the machinery on the dummy, using the crowbar to aid in this purpose. The machinery was heavy, and fearing something might give way, Freeman told Ryan to go down stairs and see that the apparatus was right. Freeman was still working at the dummy, when Ryan returned and said the door was shut and he was not permitted to go down. Freeman then went into the saloon, nearly to the door lead-

ing to the cellar. Fraser was there, and said the door was locked and he could not go down. Freeman asked him to unlock it, as he wanted to put his machinery down, and said if he did not open it, he would break it. Fraser said he would not open it. Freeman then raised the crowbar and aimed a blow at the lock, and Fraser, attempting to interfere, he struck a glance blow of the crowbar on his neck and shoulder. Freeman retreated, striking up and down with the crowbar, when Swift, the bartender of Fraser, came and attempted to wrest the crowbar from Freeman, and then Ryan attacked Swift, and struck him on the head with a hammer. Fraser then started for the front door, and Swift came at Freeman with a stool, which Freeman knocked out of his hands. While thus engaged, Fraser was shot by Mullady, who, up to that time, had taken no part in the affray. Fraser was soon after taken to the New York hospital, where he died on the 7th of July, from the effect of the pistol shot, fired by Mullady. A motion for a nonsuit was made and denied, and the case was submitted to the jury, who found for the plaintiff $5,000 damages.

Many requests to charge were made by the defendant, but the only one noticed in the opinion is as follows: If the jury believe that Mullady fired the pistol shot which caused Fraser's death, with the premeditated design to effect his death, the defendant, Freeman, is not liable for his act. This the court refused and the defendant excepted.

*John H. Reynolds*, for the appellant.

*Chauncey Shaffer*, for the respondent.

ALLEN, J. The exceptions taken upon the trial do not present any questions as to the character or degree of force which may be lawfully exerted to obtain access to premises from which the rightful owner is tortiously and forcibly excluded. It will be assumed, for the purposes of this appeal, that the defendant was a trespasser, seeking by force to enter

upon the premises in dispute, and that Mullady and the other persons aiding him were employed with a design to overcome all opposition, and to use such force as should be necessary to accomplish the purpose, and that this was illegal, and constituted the defendant, and those present and assisting him, trespassers as against Fraser the deceased. There were no exceptions to the rulings of the judge at the trial, upon this branch of the case.

Under such circumstances the defendant, the principal, putting the others in motion, is answerable for all the necessary or legal and natural consequences that ensue, such as might in the ordinary and natural course of events follow. To this extent he must be regarded as intending all the consequences of the proceedings instituted and carried on by him. The acts of the agent are his acts. The law holds that he ought to have foreseen whatever results naturally or necessarily flow from his unlawful act, and he will be held liable for all that is done by his agents in furtherance of the general design, for acts within the general scope of the design, or which legitimately and naturally result from the purpose. (Addison on Torts, 5; *Guille* v. *Swan,* 19 J. R., 381.) But the principal is not liable for the malicious and willful act of the servant, done without his direction or assent. (*McManus* v. *Crickett,* 1 East, 106.) For the unauthorized, willful or malicious act of the agent, the principal is never liable. (Story on Agency, § 456; *Wright* v. *Wilcox,* 19 W. R., 343.) Judge COWEN, in the case last cited, says: "A man shall be presumed to intend the ordinary consequences of his own acts, and especially, so far as such consequences may be innocent of all evil intention; for these he may be safely held accountable. But for those which are remote and barely possible he is not accountable; and if they be, at the same time, criminal, it would be violating one of the plainest principles of presumptive evidence to say that he intended them."

Upon the trial, the judge was requested to charge, as a distinct proposition, that if the jury believed that Mullady fired the pistol shot, which caused Fraser's death, with

the premeditated design to effect his death, the defendant, Freeman, was not liable for his act. Homicide, when perpetrated "from a premeditated design to effect the death of the person killed, or of any human being," is declared to be murder in the first degree, when it is not manslaughter or justifiable homicide. (Laws of 1862, chap. 197.) The request was in the words of the statute, and within the statutory definition of murder, and there was nothing in the form of the request to bring the act within any of the degrees of manslaughter or the description of justifiable homicide. To kill "with premeditated design," is to kill "with malice aforethought."

The terms of the request had reference as well to the common-law as the statutory definition of murder, and the request was in effect that if the jury should find that the killing was willful and malicious, the defendant was not responsible for the act. (*People* v. *Enoch*, 13 Wend., 159; *People* v. *White*, 22 id., 167; *Fitzgerrold* v. *The People*, 37 N. Y., 413.) The jury have not found that the defendant intended murder or the taking of human life, or that it was within the consequences of his act in the necessary and ordinary course of events, and the case was not submitted to them on any such theory. By the refusal to charge as requested, the judge held the defendant liable for the willful and malicious, as well as criminal, act of Mullady. There was no qualification or limitation of the responsibility of the defendant for the acts of his agents; but he was declared chargeable for everything that was done by them, whether in the course of the employment, and at the instigation of the defendant, or of their own volition, to effect their own purposes, or to gratify their own malice. The law does not charge a master for the malicious act of the servant. (*Vanderbilt* v. *Richmond T. Co.*, 2 Comst., 479; *Croft* v. *Alison*, 4 B. & Ald., 590.)

Willful murder was certainly a remote and scarcely possible result of the action of the defendant, and could not have been within his intent, so that it could be said that he per

formed the act by the hands of his servant, which is the foundation of the ordinary liability of masters for the acts of their servants. The request excluded the idea that the homicide was authorized by the defendant or committed in the furtherance of his plans and purposes, or that it was within the range of possibilities contemplated, or which could have been foreseen by him.

The cause was submitted to the jury upon the theory that the defendant was responsible for all the acts of his servants, whether committed in furtherance of his plans and purposes, and in pursuance of his orders, or of another's, and for purposes of their own. This was in violation of the principles regulating the liability of a master for the acts of his servant. (Bacon's Ab., Master and Servant, K.) As joint tort feasor, the individuals concerned were only liable for the acts of each other, committed in furtherance of the common design, or which they instigated, or in which they took part as aiders and abettors. Other questions are involved; but as a new trial must be granted for the reasons stated, they will not be passed upon. The judgment must be reversed and a new trial granted, costs to abide event.

GROVER. PECKHAM and RAPALLO, JJ., concurred.

CHURCH, Ch. J., and FOLGER, J., were for affirmance.

Judgment reversed.