We have examined the testimony given on the trial and are of opinion that there was sufficient evidence to require the submission to the jury of the question whether Hand, the defendants' delivery clerk, was at the time of the infliction of the injury complained of, acting within the scope of his employment. In considering this question we are not confined to the testimony of Hand, but must look also at the statements of the other witnesses; and it was for the jury to say to which they would give credit. That Hand was employed by the defendants as their delivery clerk is conceded; but there was a conflict in the evidence as to the nature and extent of his duties. It is contended on the part of the defendants, and some of their witnesses testify, that his only duty was to take receipts from the carmen for the bales they carted away from the wharf, but not to examine the marks on the bales, or to see that the carmen took away the right bales; that he only counted the bales after they were loaded, but could not see the marks, and did not tally the loads. On the other hand, there was evidence that the duties he performed were to show every one his cotton and see that every one got his cotton; that he would count the bales and see the marks and see that every one got the right marks; that he examined the marks and saw and counted every bale that went on to the cart. That if a bale was missing the carman would go to him and he would go round and look for it among the different lots on the wharf. Even the defendant Baker, when examined as a witness, testified that when a man wanted to get merchandise which arrived he had to go to Mr. Hand with the schedule of marks and present the order for his cotton; and that Mr. Hand was the man to attend to the delivery of the cotton mentioned in the order. That if a carman was allowed to take off bales and boxes belonging to other people, Hand would not be properly attending to the business of his employers; and that it was *Page 5 
his duty to deliver the proper goods, and that witness supposed it was Hand's duty to look at them to see that the carman got the right marks on his cart.
On the occasion in question there was a large quantity of cotton on the wharf. There was a row of bales, standing on end, close together, so as to form a screen, which prevented a person standing on one side of it from seeing what was passing on the other side. Hand was on one side of this row, and on the other a cart was loading, the plaintiff being engaged in putting bales on the cart. Hand, knowing that the cart was loading there, threw down one of the bales, which falling on the plaintiff broke his leg. The account he gave of the transaction was, that in walking around he saw this tier and pushed the bale over, because he wanted to see beyond it and pass through. The motive he assigned for the act (and on his testimony on that point the defence rests) was that some cotton had been stolen from the bales the day before, and his natural curiosity led him to look at the loaders in their performance while on the bulkhead. This, the defendants claim, was beyond the scope of Hand's duties, as they had a watchman, whose duty it was to look out for stealing, and that it was no part of the duty of the delivery clerk. But the difficulties in the way of nonsuiting on that ground are that neither the court or the jury were bound to accept Mr. Hand's statement as to his motive. He was testifying in the interest of his employers, and the jury would have had the right to take this fact into consideration. There was evidence in the case tending to show that it was Mr. Hand's duty to watch the carts while loading and see that the proper bales were put on. If this were so his proper position was near the cart, or at least where he could observe the loading, and the jury might have come to the conclusion that he threw down the bale for the purpose of observing or approaching the cart and performing his ordinary duty in seeing to the proper delivery of the cotton. Furthermore, the jury might have inferred from the whole evidence that Hand was walking round the wharf in the performance of his duties, the *Page 6 
business of delivery being then going on, and that finding this row of bales in his way, he threw one down, as he testifies, to make a passage for himself. But if his statement as to his motive were true, it is difficult to say that a delivery clerk, whose function it was to see that the proper goods were delivered to the proper parties, was traveling outside of the scope of his duty in observing whether the goods were being stolen, when he suspected that they were, and in removing a screen, which according to his own testimony he suspected had been erected for the purpose of concealment, and which was, as he termed it, "an old trick." Such an act can hardly be attributable to idle curiosity. If it was his duty to see that the goods were delivered to the parties entitled and to obtain vouchers for them, he can hardly be said to have been transcending his powers in endeavoring to prevent their being carried off by thieves, when he suspected this was being done. It may be that he was not bound to watch for thieves, there being a watchman charged with that duty, but if, casually, suspicious signs came to his notice, we think his general duty to his employers justified him in endeavoring to ascertain what was being done.
It is claimed that his employers were not concerned in what was done to the bales after they were turned out on the wharf and separated, especially when they were being handled by the servants of the consignees. The answer to this is that if the bales were found depleted when they came to the warehouse of the consignee, it might become very important to the defendants to show when and how the depletion occurred, and that it was not while in their custody as carries.
We are satisfied that the case was one eminently proper to be submitted to the jury, and that it was very fairly submitted to them by the charge of the court; and we should reverse the order granting a new trial but for the circumstance that there was a motion for a new trial at the trial term, and an appeal to the General Term from the order denying a new trial, which brought before the General Term the question of the weight of the evidence as well as the *Page 7 
questions of law arising upon the exceptions. The rule that where the evidence is conflicting, and a new trial is granted, this court will not reverse in such a case, inasmuch as the decision of the General Term may have been founded on the weight of evidence, is too well settled to be now disturbed. (Wright v.Hunter, 46 N.Y., 409; Sands v. Crooke, 46 id., 564, and numerous cases since decided.)
It is attempted to distinguish the present case on the ground that the motion for a new trial, on the minutes, not having been made at the same term at which the trial was had, the court had no jurisdiction to grant it, and that, therefore, the appeal from the order denying the new trial did not bring the question of fact before the General Term. We cannot sustain this view. The question was rather one of regularity than of jurisdiction. The court, at Special Term, had power to grant a new trial on the evidence. If both parties went to the argument on the minutes without making and settling a case, and no objection was made on that ground, the question of regularity was waived. It appeared from the order that the objection was made to the jurisdiction of the court to entertain the motion after the entry of judgment; but no other objection appears. This objection is disposed of by the decisions of this court. (Tracey v. Altmyer,46 N.Y., 598.) It does not even appear that the motion for a new trial was not, in fact, made at the same term in which the cause was tried. The order denying the motion is dated in February, 1873, but nonconstat that the motion was not made earlier. The order is directed to be entered as of the December trial term, 1872. The appeal therefrom is dated in January, 1873, indicating that the motion was made and denied prior to the date of the order. It may well be that the motion was made in due time, but the entry of the formal order omitted and the defect supplied by its entrynunc pro tunc. We think the question whether the verdict was against the evidence was properly before the General Term.
In accordance with the authorities before cited, the plaintiff should have proceeded to a new trial or procured the *Page 8 
order of the General Term to have been settled, denying the motion for a new trial on the evidence, and thus showing on the record that it was granted on the exceptions only.
This appeal must be dismissed, with costs.
All concur; FOLGER, J., concurring in result.
Appeal dismissed.