### HEENRICH *v.* PULLMAN PALACE CAR Co.

*(District Court, D. Oregon, 1884.)*

1. LIABILITY OF THE MASTER FOR THE ACT OF HIS SERVANT.
   A master is liable for the act of his servant when done within the scope or general course of his employment, although done contrary to the master's orders.

2. SAME—COMPLAINT—DEMURRER.
   An answer to a complaint by a passenger against a common carrier for injuries caused by the negligent discharge of a pistol by the car porter, which alleges merely that the porter received the pistol from another passenger, in violation of the company's rules and directions to receive no package, baggage, or article of luggage from passengers, is demurrable.

Action for Injury to the Person.

*Julius Moreland,* for plaintiff.

*Charles B. Bellinger,* for defendant.

DEADY, J. This action is brought by the plaintiff, a citizen of Minnesota, against the defendant, a corporation formed under the laws of Illinois, to recover $25,000 damages for an injury to her person, received while traveling as a passenger on a Pullman palace car attached to a train on the Northern Pacific Railway, running from St. Paul to Portland, and caused, as alleged, by the negligent handling of a pistol by the porter in charge of said car while "in the discharge of his duty as such porter," and "while attending to the defendant's business," whereby the same fell on the car floor and was discharged, the ball entering the thigh of the plaintiff, and inflicting a dangerous wound therein. The answer of the defendant controverts the allegation of the plaintiff that the porter "was in the discharge of his duty" when he let the pistol fall; and also contains a plea in bar of the action—that the pistol mentioned in the com-

plaint was the property of a passenger on said train; that said porter received it from the owner, and was carrying it through the car at the request of said owner, and not otherwise, at the time of the discharge and wounding in the complaint mentioned; and that it is one of the defendant's rules and directions to all its car porters that they are not permitted to receive any package, baggage, or article of luggage from passengers, or to become custodians thereof; which rule and order was, at the time of the taking and carrying of said pistol by said porter, well known to him; and that said porter, in so receiving and carrying said pistol, was acting in violation of the defendant's orders. To this new matter the plaintiff demurs, for that it does not constitute a defense to the action.

A corporation is liable to the same extent as a natural person for an injury caused by its servant in the course of his employment. *Moore* v. *Fitchburg Ry. Corp.* 4 Gray, 465; *Thayer* v. *Boston*, 19 Pick. 511.

In Story, Ag. § 452, it is laid down that a principal is liable to third persons in a civil suit for the frauds, deceits, concealments, misrepresentations, torts, negligences and other malfeasances or misfeasances and omissions, although the principal did not authorize or justify, or participate in, or, indeed, know of such misconduct, or even if he forbade the acts or disapproved of them. In all such cases the rule applies *respondeat superior;* and it is founded on public policy and convenience; for in no other way could there be any safety to third persons in their dealings, either directly with the principal, or indirectly with him through the instrumentality of agents. In every such case the principal holds out his agent as competent and fit to be trusted, and thereby, in effect, he warrants his fidelity and good conduct in all matters within the scope of his agency.

In *Ramsden* v. *Boston & A. R. Co.* 104 Mass. 117, it was held that the corporation was liable to an action for an assault and battery, for the act of its conductor in wrongfully and unlawfully attempting to seize the parasol of a passenger for her fare. In delivering the opinion of the court, Mr. Justice GRAY said:

"If the act of the servant is within the general scope of his employment, the master is equally liable, whether the act is willful or merely negligent, or even if it is contrary to an express order of the master."

In *Philadelphia & R. Ry. Co.* v. *Derby*, 14 How. 468, a servant of the corporation ran an engine on its track contrary to its express order, and thereby caused a collision, in which the defendant was injured, and it was held that the corporation was liable for the injury. In delivering the opinion of the court, Mr. Justice GRIER said:

"The rule of *respondeat superior*, or that the master shall be civilly liable for the tortious acts of his servant, is of universal application, whether the act be one of omission or commission, whether negligent, fraudulent, or deceitful. If it be done in the course of his employment, the master is liable; and it makes no difference that the master did not authorize, or even know

of, the servant's act or neglect; or even if he disapproved or forbade it, he is equally liable, if the act be done in the course of his servant's employment."

The authorities to this point might be multiplied indefinitely, but these are sufficient. Tried by them, this defense is clearly bad. It is not alleged that the corporation commanded the porter to do the act which caused the injury to the plaintiff, and therefore if it was not done in the course of his employment it is not liable therefor. But if the act was done in the course of his employment, the corporation is liable to the plaintiff for the injury caused thereby, notwithstanding the order to the porter. The case, so far as appears, must turn on the issue made by the denial of the allegation that the porter was in the discharge of his duty, or the course of his employment, at the time he let the pistol fall. And whether he was acting contrary to his employers' orders or not is altogether immaterial.

In Whart. Neg. § 157, in discussing this subject, the learned author says:

"That he who puts in operation an agency which he controls, while he receives its emoluments, is responsible for the injuries it incidentally inflicts. Servants are, in this sense, machinery, and for the defects of his servants, *within the scope of their employment*, the master is as much liable as for the defects of his machines."

And Cooley, Torts, 539, says:

"It is immaterial to the master's responsibility that the servant, at the time, was neglecting some rule of caution which the master had prescribed, or was exceeding his master's instructions, or was disregarding them in some particular, and that the injury which actually resulted is attributable to the servant's failure to observe the directions given him. In other words, it is not sufficient for the master to give proper directions; he must also see that they are obeyed."

On page 540 the learned author gives an apt illustration of the rule. A farm servant burned over the fallow when the wind was from the west, and thereby destroyed the adjoining premises on the east, although he had been directed, on that very account, not to set out the fire unless the wind was in the west, and the master was responsible.

The cases cited by counsel are not in conflict with this conclusion. They are Whart. Neg. § 168; *Tuller* v. *Voght*, 13 Ill. 285; *Oxford* v. *Peter*, 28 Ill. 435; *Foster* v. *Essex Bank*, 17 Mass. 508; and *Mali* v. *Lord*, 39 N. Y. 381. They are only to the effect, as is said in *Oxford* v. *Peter*, that the master is not liable "for the willful or malicious acts of his servant, unless it is in furtherance of the business of the master. The contention in these cases was not as to the rule of law, but the application of it,—whether the act complained of was done in the furtherance of the business of the master, or, rather, in the course of the servant's employment. Sometimes this is a very nice question, and difficult to determine, but the rule of law is, I think, undisputed that where the servant is acting in the course of or within the scope of his employment, the master is liable for his acts

of commission or omission, as if they were his own; and this, notwithstanding the servant may have acted contrary to his master's orders. Whether the act complained of in this case was within the scope of the porter's employment, on that occasion, will be ascertained from the evidence on the trial of the issue elsewhere made in the case.

The demurrer is sustained.

---

SCOPE OF EMPLOYMENT. The principal case affords merely another illustration of the well-settled rule that a master is liable for the act of his servant if within the scope of his employment, although the act in question was willful,[1] or even malicious,[2] or contrary to the employer's express instructions.[3] The difficulty arises in the application of this principle to particular states of fact; and to discover the underlying principle which divides the cases requires careful discrimination.

A driver went out with the team on an errand of his own, and, returning, called for some of his master's goods on the way, and, while carrying them, had a collision: it was held that he was not acting within the scope of his employment.[4] On the other hand, where the pilot of a ferry-boat departed from his usual course, between the *termini* of his route, to place a stranger upon a passing tow, without compensation to himself or his employers, the latter were held liable for a collision resulting therefrom upon proof that the same departure had been made before, and that it might indirectly benefit the employers.[5] And the owner of a horse and cab let by the day, for use at the discretion of the driver, was held liable for the latter's negligence in running over the plaintiff, although the injury occurred when returning to the stable by an indirect route on a private errand of his own.[6]

Where plaintiff's horse was frightened by a pile of bags left temporarily at the foot of a hill, by an employe, to lighten his load while delivering goods, the employer was held liable for the damages occasioned thereby.[7] Where a driver took a load of coal to the wrong house, and delivered it to one who had not ordered it, but subsequently paid for it, and the driver negligently left the coal-hole open, the master was held liable.[8] A stevedore's foreman, dissatisfied with a cartman's unloading, zealously took the cartman's place, and, in throwing a package, injured the plaintiff. This was held to be evidence to go to the jury that he was acting for the stevedore. The question was, did he act, perhaps overzealously, in his employment, or did he act for a purpose of his own?[9]

[1] Mott v. Consumers' Ice Co. 73 N. Y. 543; Rounds v. Delaware, L. & W. R. Co. 64 N. Y. 129; Shea v. Sixth Ave. R. Co. 62 N. Y. 180; Howe v. Newmarch, 12 Allen, 49; Eckert v. St. Louis Transfer Co. 2 Mo. App. 36. See note by Seymour D. Thompson, Esq., 15 FED. REP. 66.

[2] Schultz v. Third Ave. R. Co. 89 N. Y. 242; Jackson v. Second Ave. R. Co. 47 N. Y. 275; S. C. 7 Amer. Rep. 448; Day v. Brooklyn City R. Co. 12 Hun, 435; Hoffman v. N. Y. Cent., etc., R. Co. 87 N. Y. 25; Cohen v. Dry-dock, etc., R. Co. 69 N. Y. 170.

[3] Quinn v. Power, 87 N. Y. 535; S. C. 41 Amer. Rep. 392; Cosgrove v. Ogden, 49 N. Y. 255, S. C. 10 Amer. Rep. 361.

[4] Rayner v. Mitchell, 25 Weekly Rep.

633. Compare Sheridan v. Charlick, 4 Daly, 338.

[5] Quinn v. Power, 87 N. Y. 535; S. C. 41 Amer. Rep. 392.

[6] Venables v. Smith, L. R. 2 Q. B 279; S. C. 20 Moak, Eng. Rep. 345; Flint v. Norwich, etc., Trans. Co. 34 Conn. 554; S. C. 6 Blatchf. 158; approved in Putnam v. Broadway, etc., R. Co. 55 N. Y. 108; S. C. 14 Amer. Rep. 190; 15 Abb. Pr. (N. S.) 383, reversing 36 Super. Ct. (Jones & S.) 195. See, also, a similar case lately decided by the Minnesota supreme court, Mullvehill v. Bates, 17 N. W. Rep. 959.

[7] Phelon v. Stiles, 43 Conn. 426.

[8] Whitely v. Pepper, 36 Law T. Rep. (N. S.) 588.

[9] Burns v. Poulson, L. R. 5 C. P. 563; S. C. 6 Moak, Eng. Rep. 261.

In a recent case[1] it was sought to hold a railroad company liable for the destruction of the plaintiff's hay by fire, communicated by burning grass ignited from a fire negligently left burning by the company's section men employed to repair the track, which fire they had kindled at noon on the company's right of way for the purpose of warming their coffee. But the court held the company not liable. The court say: "The act of these section men in building a fire to warm their own dinner was in no sense an act done in the course of and within the scope of their employment, or in the execution of defendant's business. For the time being they had stepped aside from that business, and in building this fire they were engaged exclusively in their own business as much as they were when eating their dinner, and were for the time being their own masters as much as when they ate their breakfast that morning or went to bed the night before. The fact that they did it on defendant's right of way is wholly immaterial in the absence of any evidence that defendant knew of or authorized the act. Had they gone upon the plaintiff's farm and built the fire the case would have been precisely the same. It can no more be said that this act was done in the defendant's business, and within the scope of their employment, than would the act of one of these men in lighting his pipe after eating his dinner, and carelessly throwing the burning match into the grass. See *Williams* v. *Jones*, 3 Hurl. & C. 256." The same rule was applied in a recent English case, where the plaintiff sought to hold a solicitor, who had his office above plaintiff's warerooms, liable for damages caused by the overflow of water left running by the solicitor's clerk after washing his hands in the private room of his employer, where he had been forbidden to go.[2]

It is immaterial that an agent exceeds the powers conferred upon him by the principal, and that he does an act which the principal is not authorized to do, so long as he acts in the line of his duty, or being engaged in the service of his principal, attempts to perform a duty pertaining, or which he believes to pertain, to that service. This rule was applied where the gate-keeper of a railroad company detained a passenger attempting to leave the station without producing his ticket or paying his fare, as required by a rule of the company.[3] A servant whose duty it is to see that goods are delivered to the proper persons, and to obtain vouchers, cannot be said to transcend his powers in endeavoring to prevent their being carried off by thieves, although there is a watchman who is charged with that duty.[4] But, on the other hand, the contrary was held as to the malicious act of a servant in shooting a trespasser on his master's premises.[5] And a merchant was held not liable for his employe's act in directing the arrest of a customer suspected of stealing goods from the store.[6]

CARRIER CASES. A common carrier of passengers may be liable for the act of his servant, either because it was within the scope of his employment, and, therefore, whether the injured party be a trespasser or mere licensee or a passenger, within the general rule of liability; or because the act was a breach of the carrier's contract of carriage where the injured party was a passenger.

Under the first class falls a great variety of cases. Thus, where the plaintiff jumped upon the platform of a baggage car in motion, and was ordered off by the baggage-master, the rules of the company prohibiting all except employes from riding on the platform, and requiring baggage-masters to enforce

[1] Marrier v. St. Paul, M. & M. Ry. Co. (Minn.) 17 N. W. Rep. 952.
[2] Stevens v. Woodward, L. R. 6 Q. B. Div. 318; S. C. 50 L. J. C. P. 231; and 29 Moak, Eng. Rep. 645.
[3] Lynch v. Met. Elev. Ry. Co. 90 N. Y. 77, affirming 24 Hun, 506.
[4] Courtney v. Baker, 60 N. Y. 1.
[5] Fraser v. Freeman, 43 N. Y. 566, reversing 56 Barb. 234.
[6] Mali v. Lord, 39 N. Y. 381.

them, and the plaintiff refusing, on the plea of an obstruction they were passing, was kicked off by the baggage-master, it was held that the fact that the plaintiff was a trespasser did not preclude his recovery against the company, and that its liability, based on the authority of the baggage-master and the scope of his employment, was for the jury to determine.[1] In this case, where the jury were charged that if the baggage-master acted "willfully and maliciously towards the plaintiff, outside of and in excess of his duty," defendant was not liable, it was held not error to refuse to charge that it was sufficient to exempt the defendant from liability that the act of the baggage-master was willful.

In *Shea* v. *Sixth Ave. R. Co.*[2] the complaint alleged that the plaintiff stepped upon the platform of a street car obstructing a crossing, in order to cross the street, when she was "forcibly, willfully, and violently thrown off by the driver," acting as "the servant and agent and in the employment of the defendant." It was held that the averment of willfulness, not necessarily implying malice on the part of the driver, but as well a too-zealous discharge of his duty to the defendant, did not make the complaint demurrable.

Where the injured person came upon the conveyance at the unauthorized invitation or request of the carrier's servant, the carrier may be liable for his servant's negligence. For example, the driver of a horse car offered some little girls a free ride on the platform, while his car was moving slowly, and suddenly increased his speed, so that one fell off, and was run over, the company was held liable for his negligence.[3] On the other hand, where a fireman was intrusted with an engine and tender, in place of the engineer, to take it to a station for water, detached from the rest of the train, and asked a boy to turn on the water, who, while he was climbing on the tender for that purpose, was injured by the jar of the backing down of the rest of the train, at its usual speed and force, it was held that the railroad company was not liable, because the act of the fireman was not within the scope of his employment.[4]

A horse car company has been held liable for the act of a conductor in ejecting plaintiff from the car upon a charge not sustained by the jury, of disorderly conduct, although the conductor acted merely upon a mistaken impression as to the facts.[5] A conductor has no authority to bind a railroad company by a promise to arouse a sleeping passenger at his station, so as to make the company liable for his neglect so to do. The passenger sleeps at his peril.[6]

BREACH OF CARRIER'S CONTRACT. As said in *Pendleton* v. *Kinsley*,[7] "Passengers do not contract merely for ship-room and transportation from one place to another, but they also contract for good treatment, and against personal rudeness and every wanton interference with their persons either by the carrier or his agents employed in the management of the ship or other conveyance." This duty belongs to the carrier, and is not discharged by its delegation to competent employes. If the employe fails to perform that duty it is immaterial whether the failure be accidental or willful, in the neglect or in the malice of the employe; the contract of the carrier is equally broken in the negligent disregard or in the malicious violation of the duty by the employe.[8] In the case last cited, a railroad company was held liable for the act of a conductor in kissing the plaintiff, a lady passenger, by force, the court saying: "It would be cheap and superficial morality to allow one owing a

[1] Rounds v. Delaware, L. & W. R. Co. 64 N. Y. 129.

[2] 62 N. Y. 180.

[3] Wilton v. Middlesex R. Co. 107 Mass. 108.

[4] Flower v. Pennsylvania R. Co. 69 Pa. St. 210. Compare Snyder v. Hannibal & St. Joe R. Co. 60 Mo. 413.

[5] Higgins v. Watervliet Turnpike Co. 46 N. Y. 23. Compare Bayley v. Manchester, etc., Ry. Co. 7 C. P. 415 · S. C. 3 Moak, Eng. Rep. 313.

[6] Munn v. Georgia, etc., R. Co. (Sup. Ct. Ga. Feb. 2, 1884) 18 Cent. Law J. 176.

[7] 3 Cliff. 416.

[8] Craker v. Chicago, etc., R. Co. 36 Wis. 657.

duty to another to commit the performance of his duty to a third, without responsibility for the malicious conduct of the substitute in the performance of the duty."

The carrier's liability in such case resting upon the ground of a breach of contract, it is immaterial whether the servant was acting within the scope of his authority or not. The case of *Isaacs* v. *Third Ave. R. Co.*,[1] in which a street railroad company was held not liable for the act of a conductor in pushing the plaintiff from the platform upon her refusal to alight until the car should come to a full stop, was recently said to have been erroneously decided upon the assumption that the rule of the master's liability for the assault of a servant committed upon a person to whom the master owed no duty was applicable to the case;[2] and the case may be regarded as overruled by the case cited, where the driver of a horse car assaulted a passenger who had dendeavored to prevent the driver from beating a newsboy who jumped upon the car, and the railroad company was held liable for the assault, and upon its contract to carry the passenger safely; not as insuring him against every possible danger, but as undertaking to protect him from the negligence or willful misconduct of its servants.

In *Goddard* v. *Grand Trunk Ry. Co.*,[3] which contains a clear and full statement of the carrier's duty to a passenger, with a review of many cases, a railroad company was held liable for the malicious act of a brakeman who, shortly after receiving the plaintiff's ticket, declared that he had not done so, and that plaintiff was endeavoring to evade payment of fare, and otherwise insulted him, and threatened him with personal violence. The court say: "The law seems to be now well settled that the carrier is obliged to protect his passenger from violence and insult, from whatever source arising. He is not regarded as an insurer of his passenger's safety against every possible source of danger, but he is bound to use all such reasonable precautions as human judgment and foresight are capable of, to make his passenger's journey safe and comfortable. He must not only protect his passenger against the violence and insults of strangers and co-passengers, but, *a fortiori*, against the violence and insults of his own servants. If this duty to the passenger is not performed, if this protection is not furnished, but, on the contrary, the passenger is assaulted and insulted through the negligence or willful misconduct of the carrier's servant, the carrier is necessarily responsible." Upon the same ground the owners of a steam-boat were held liable for an employe's assault upon a passenger who had remonstrated against his treatment of another passenger.[4] So, also, for the clerk's assault upon a boy passenger, whom he accused of attempting to evade payment of his fare.[5]

It is worth while to notice that, though the distinction is clearly established, comparatively few of the cases in point expressly indicate the carrier's breach of contract as the basis of the decision, without reference to whether or not the act may be deemed to be within the scope of the servant's employment. Thus, where a brakeman assaulted a passenger who insisted upon entering a car which the brakeman told him was reserved for ladies, the company was held liable for the assault, upon the ground that a master is liable for even the willful or criminal act of his servant if done in the course of his employment, though the court refer briefly to the duty of a railroad company to its passengers as distinguishing the case at bar from others cited.[6] And upon this ground a railroad company was held liable for an assault by a

[1] 47 N. Y. 122. See Moak, Und. Torts, 31.

[2] Stewart v. Brooklyn & C. R. Co. 90 N. Y. 583.

[3] 57 Me. 202.

[4] Bryant v. Rich, 106 Mass. 180.

[5] Sherley v. Billings, 8 Bush, 147. See, also, a similar case, Pendleton v. Kinsley, 3 Cliff. 416.

[6] McKinley v. Chicago, etc., R. Co. 44 Iowa, 314.

conductor, who attempted to seize plaintiff's property as security for her fare, which she claimed to have paid.[1]

In *Goddard* v. *Grand Trunk Ry. Co.*[2] it was held, after an extended examination of the authorities, that exemplary damages might be recovered against the carrier for the willful assault of his servant; but in *Craker* v. *Chicago, etc., R. Co.*[3] it was held that only compensatory damages were allowable.

PLEADING. A general averment that the acts of the servant were in the range of his employment is a conclusion of law, and not sufficient.[4] An averment that defendant, by the culpable carelessness and mismanagement of itself and its employes, ran a train of cars against the plaintiff's team, lawfully traveling along the public highway, though not stating the specific acts constituting the negligence, is sufficient on demurrer.[5] While a passenger suing a railway company need only allege, in pleading, that he was injured by the derailment of the train on which he was traveling, and that the injury resulted from negligence on the part of the defendant, without stating in what the negligence consisted, it seems that, to sustain an action of like nature by an employe, it might be necessary to state in the complaint the facts constituting the injury.[6]          WAYLAND E. BENJAMIN.

*New York City.*

[1] Ramsden v. Boston, etc., R. Co. 104 Mass. 117.
[2] 57 Me. 202.
[3] 36 Wis. 657.
[4] Snyder v. Hannibal, etc., R. Co. 60 Mo. 413.

[5] Clark v. Chicago, M. & St. P. Ry. Co. (Minn.) 9 N. W. Rep. 75.
[6] Clark v. Chicago, B. & Q. Ry. Co. (Cir. Ct. S. D. Iowa, Jan. 1883.) 15 Fed. Rep. 588.