McKinley v. The C. & N. W. R. Co.

## McKINLEY v. THE C. & N. W. R. Co.

1. **Practice**: DEPOSITIONS: AMENDMENT OF CERTIFICATE. Where the certificate of the officer taking depositions did not show that the same were read over to the witnesses before they were subscribed and sworn to, it was *held* that the officer might subsequently file an amended certificate conforming to the facts.

2. **Railroads**: LIABILITY FOR MALICIOUS ACTS OF EMPLOYES: MASTER AND SERVANT. A railway company is liable for the malicious and criminal acts of its employes toward passengers while they are executing what they suppose to be the orders of the company, even though the orders do not in fact contemplate such acts.

3. ———: DAMAGES: INJURY TO FEELINGS. Mental anguish arising from the nature and character of the assault is a proper element of compensatory damages, and the outrage and indignity which have accompanied an injury are to be estimated as well as its physical effects, even in cases where exemplary damages do not lie. DAY, J., *dissenting*.

4. ———: VERDICT: WHEN EXCESSIVE. While in actions for damages for personal injuries, the court is disinclined to disturb the verdict of the jury on the ground that it is excessive, yet it will not permit a verdict to stand which appears to be the result of passion or prejudice.

5. ———: ———: ———. Where a passenger, seeking to enter a car reserved for ladies, was ejected with violence, whereby he suffered severe bodily injuries, and recovered a judgment against the railway company for $12,000, it was *held* that the amount should be reduced to $7,000. BECK, J., *dissenting*.

6. **Jurisdiction**: TRANSFER OF CAUSE TO U. S. COURT: PENDENCY IN STATE COURT. Where, after a procedendo had been issued, a petition for rehearing was filed within sixty days, it was *held* that the cause could not be transferred to the Federal Court upon the filing of a petition therefor and bond in the court below, in accordance with the requirements of the act of 1875, pending the action in the Supreme Court.

*Appeal from Linn District Court.*

TUESDAY, OCTOBER 17.

THIS action is brought to recover damages for an alleged injury caused by a beating and forcible resistance of the plaintiff by a brakeman of the defendant, when the plaintiff was about to enter a passenger car of the defendant's at Howard Junction, Wisconsin, on March 22, 1872. Upon a general issue as to the facts alleged by plaintiff, and the liability of defendant, the cause was tried to a jury, who found a verdict for the plaintiff in the sum of twelve thousand dollars. A judgment was rendered thereon, from which the defendant appeals.

*E. S. Bailey* and *N. M. Hubbard*, for appellant.

*Shiras, Van Duzee & Henderson* and *Thompson & Davis*, for appellee.

SEEVERS, CH. J.—A rehearing having been granted and the questions involved having been again argued with great ability and research, it becomes our duty to re-examine and determine the questions presented.

I. At the appearance term, November, 1872, the defendant moved to suppress the depositions of certain witnesses, because

**1. PRACTICE: depositions: amendment of certificate.** the certificate of the officer taking them did not show that the same were read over to the witnesses by him before they were signed and sworn to; and because it did not state whether either party, his attorney or agent, was present at the taking. This motion was not called up for determination until the following March term of the court. In the meantime, and on January 20, 1873, the officer taking the depositions sent to the clerk of the court a further and additional certificate, made as required by law, and showing that said depositions were properly taken. The court overruled the motion, and hereon arises the first question in order. We see no reason why the officer taking a deposition may not amend his certificate according to the facts;

and when, as in this case, there is no showing or complaint but that the amended certificate truly states the facts connected with the taking of such depositions, the court may accept the same as true. This being so, it follows that there was no error in overruling the motion.

II. The next question arises upon the giving and refusing to give instructions. The evidence is too voluminous to give, even in a summary; and it will be sufficient to state that there was testimony to justify the giving of the instructions asked, if they correctly stated the law. The leading facts are that the plaintiff is a citizen of Iowa, and in March, 1872, purchased of defendant a ticket in Chicago, from there to Beloit; that a change of cars became necessary at Howard Junction; the plaintiff undertook to enter the rear car of the defendant's train upon which he was to continue his journey, and a brakeman of the defendant was at the door, charged with that duty, and refused admission to plaintiff on the ground that the rear car was for ladies, and for gentlemen accompanied with ladies, and directed him to the next car forward. The plaintiff insisted upon entering the rear car, and a rencounter there occurred between the plaintiff and the brakeman. The testimony respecting the contest between them and the extent of the injury the plaintiff received is very conflicting, and wholly irreconcilable.

The defendant asked, among others, the first instruction following, which was refused; and the court gave, on its own motion, the next instruction following, to each of which the defendant duly excepted, and now assigns such refusal and giving as error.

"1. A railroad company is not responsible for the criminal or willful acts of its agents or servants. It is only answerable for their negligent and careless acts done or omitted in the course of the performance of their duties. Therefore, if you find from the testimony in this case, that the brakeman assaulted plaintiff and inflicted the injuries complained of, such acts are criminal and willful, and plaintiff cannot recover in this action, unless it is shown that defendant authorized the act or ap-

2. RAILROADS; liability for malicious acts of employes: master and servant.

proved it afterward. There is no proof of any authority from defendant to assault or injure plaintiff, and no ratification of the brakeman's act."

"4. Much has been said in the argument to the court as to the liability of the company for the alleged wrongful and criminal assault and battery by the brakeman. You are instructed that if the plaintiff attempted to re-enter the car and was without fault on his part, as hereinafter explained, and the brakeman, with the intent and purpose to prevent him from re-entering the car for the reason that it was not intended for gentlemen unaccompanied by ladies, violently assaulted and injured the plaintiff, and was guilty of a criminal act in so doing, the defendant is liable for such injury, and the fact, if so it is, that the brakeman used such force and violence as to render himself criminally liable, does not exonerate the defendant. In other words, if the brakeman, in executing what he supposed to be his orders, used force and violence when his orders did not contemplate such means, the company is liable for such injuries as his violence occasions."

The District Court, by refusing the first of the above instructions, denied that a railroad company could not be liable for the acts of an employe when done willfully so as to constitute a crime; and by giving the last, affirmed that it would be liable for even the willful criminal acts of its employes, when done in the course of their employment. It was held by this court, in *De Camp v. The M. & M. R. Co.*, 12 Iowa, 348, and also in *Cook v. The Ill. Cent. R. Co.*, 30 Iowa, 202, each of which cases was brought to recover damages for running over stock on the track of the defendant's railroad, that "a railroad company is not responsible for the criminal or willful acts of its agents or servants." The first case does not state the facts upon which the doctrine was announced; while in the second, it was expressly found by the jury that the act of the engineer in charge of the engine which struck the colt, was intentional and willful.

In the absence of such showing, and where the willfulness of the act affirmatively appears, the doctrine announced is probably correct, and we do not desire to be understood as

affirming or disaffirming it, for the reason it is unnecessary to do so. In each of these cases the injury was done to stock, respecting which neither the railroad company or its employes were under any obligations of positive or affirmative duty; while in the case of passengers such duty does exist. These cases, therefore, do not settle the doctrine, nor apply to the case now before us.

If we were left to determine the question upon principle, whether an employer should be held liable for the willful or criminal acts of the employe done in the course of his employment, we should have very little or no hesitation in affirming such liability; and this because the employer has placed the employe in a position to do wrong, and it being done in the course of his employment, the intent with which it was done should not affect the liability of the employer whether the intent of the employe is good or ill. So long as he acts within the scope of his employment the employer should be bound. The decided weight and number of the authorities are in accord with this view. We need only refer to some of them, without stopping to discuss or review them. See *Turner v. North Branch R. R. Co.*, 4 Cal., 494; *Great Western R. R. Co. v. Miller*, 19 Mich., 305; *Finney v. C. R. & R. Co.*, 10 Wis., 395; *Brooks v. Penn. Cent. R. R.*, 57 Penn. St., 339; *St. Louis & Alton R. R. Co. v. Dalby*, 19 Ill., 353; *Little Miami R. R. v. Wetmore*, 19 Ohio, 110; *Isaacs v. Third Avenue R. R.*, 47 N. Y., 122; *Goddard v. Grand Trunk R. R.*, 57 Maine, 212; *Rich v. Bryant*, 106 Mass., 180; *Cracker v. C. & N. W. R. R.*, 36 Wis., 657.

III. There were other instructions asked and refused, and errors are assigned thereon; but in our view, the instructions given fairly covered the grounds of those refused, and we do not deem it necessary to set them out in full, or to review the criticism of counsel upon them.

IV. Upon the question of damages the court gave the following instruction:

" 9. If, in the light of the foregoing instructions, you find from the evidence that the plaintiff is entitled to recover, the next question is as to the measure of damages to which the

plaintiff is entitled. There being no evidence in the case that the general officers of the defendant advised the wrongful act, or ratified it after it was done, this

*3. ——: damages: injury to feelings.*

is not a case where exemplary or punitive damages can be allowed. The principal cannot be punished by awarding exemplary damages against him for the willful, wrongful or malicious act of his agent or servant, unless the wrongful act was done by the direction of the principal or was afterward ratified by him. The extent of the damages in such cases is what the law calls compensatory. Compensatory damages embrace the reasonable expenses incurred by the plaintiff, if any, in curing or endeavoring to cure the injuries he received; also, the damages suffered, if any, from the loss of time and inability to attend to business, resulting from the injuries received; also, the bodily pain and suffering, if any, resulting from the injuries received, *and for the outrage and indignity put upon him;* and if you find from the evidence that the plaintiff has not yet recovered from the injuries received, or if you find that the injuries are permanent, you should add such damages as you believe, from the testimony, it is fair to infer the plaintiff will suffer in the future. Taking *all* these elements into consideration, you will ascertain the amount of damages suffered by the plaintiff. He should be *fully compensated.* There has been much testimony as to the character and extent of the plaintiff's injuries, and surgical experts have been examined on this question; this evidence is entitled to your consideration, and it is for you to determine therefrom, as well as from the other evidence in the case, how great the injuries were and whether they are permanent or not."

No exception was taken to so much of the foregoing instruction as announces the doctrine that exemplary damages cannot be recovered in actions of this character, and therefore that question is not before us. The specific objection urged is, that the use of the words "and for the outrage and indignity put upon him," constitutes error. The instruction recognizes the rule that there may be a recovery for "bodily pain and suffering," but it does not recognize that there may be a recov-

ery for "mental anguish" unless "outrage and indignity" include mental pain.

That "mental anguish" caused solely by the injury inflicted is an element of compensatory damages is not vigorously contested by counsel, and such doctrine is clearly recognized in *Muldowney v. Ill. Central R. R. Co.*, 36 Iowa, 462. That case does not recognize any difference between mental anguish caused by the injury, and such as may arise from the manner in which the assault was committed, or the outrage and indignity caused. But as the case before the court did not call for the expression of an opinion on the latter proposition, it is fair to presume it was only intended to refer to and cover the former.

We are unable to see that *Hendrickson v. Kingsbury*, 21 Iowa, 379, has any bearing whatever on the question presented in the present case. The foregoing are the only cases determined by this court, which have been cited by counsel as bearing on the question before us.

If the instruction only means by the terms "outrage and indignity," mental anguish caused by the injury, then it would not be erroneous under the rule laid down in the Muldowney case, and in *Canning v. Inhabitants of Williamstown*, 1 Cush., 451; *Penn. & Ohio Canal Co. v. Graham*, 63 Penn. St., 290.

"Outrage and indignity" as used in the instruction must mean and include mental anguish, or pain as distinguished from bodily suffering; and as a recovery is not confined to such mental pain as arises from, or is caused by the injury inflicted, the question is fairly presented whether mental anguish arising from the nature and character of the assault, constitutes an element of compensatory damages. The appellant insists that such mental pain is not an element of compensatory damages, but concedes it may be considered in a case proper for the assessment of exemplary damages.

As we have seen, mental anguish arising from the injury, that is, pain caused by the wound or broken arm, constitutes an element of compensatory damages, and we, on principle, are unable to see why mental pain arising from or caused by the

nature and character of the assault whereby the wound was inflicted or arm broken, should not also be an element of such damages.

The one is as easily estimated and determined as the other, and practically the two cannot be separated or distinguished. The party injured cannot tell when one ends, and the other begins. The value or damage arising from either or both, cannot be accurately computed, and from the nature of things they are so blended together they cannot be separated or distinguished. The attempt, therefore, to draw a line or make a distinction between the two, and assign one to the class of exemplary and the other compensatory is futile. The distinction is too fine to serve any practical purpose, in the determination of causes by courts and juries.

A careful examination of the authorities will disclose the fact that the weight of adjudicated cases is in favor of the proposition, that mental anguish arising from the nature and character of the assault is an element of compensatory damages. It was so held in *Smith v. R. R. Co.*, 23 Ohio St., 10, and *Flagg v. R. R. Co.*, 43 Ill., 365, both being cases of expulsion from cars, and in *Smith v. Holcomb*, 99 Mass., 552, an action for assault and battery, it was held that "insult and indignity inflicted upon the plaintiff, by reason of the blows given by defendant," should be taken into consideration in assessing the damages, nothing being said as to exemplary damages. In *Meagher v. Driscoll*, 99 Mass., 281, it was held in an action for trespass on real estate, and removing the body of the plaintiff's deceased child therefrom, that injury to the feelings of the plaintiff might be considered in assessing the damages. There can be no pretense there was either fraud, malice, negligence, wantonness or intended wrong in the case.

In an action to recover damages for injuries suffered by reason of a defective bridge, the jury were directed in assessing damages to take into consideration the *peril*, danger and *suspense* to which the plaintiff was exposed, and the Supreme Court approved the charge and added, that actual injury is not confined to the wounds and bruises upon the body, but extends to mental suffering. The mind is no less a part of

the person than the body, and the sufferings of the former are sometimes more acute and. lasting than those of the latter. *Seeger v. Town of Barkmanstead*, 22 Conn., 98, and see *Masters v. Town of Warren*, 27 Conn., 300; *Lawrence v. Housatonic R. R. Co.*, 29 Conn., 390; *Taber v. Houston*, 5 Ind., 322; *Cox v. Vunderkleed*, 21 Ind., 164.

The late case of *Cracker v. C. & N. W. R. R. Co.*, 36 Wis., 657, is directly in point. In that case the conductor by the use of some force kissed the plaintiff, a. female passenger. The defendant discharged the conductor and did what it could to show his conduct was .disapproved. The jury assessed the damages at one thousand dollars, and the verdict was sustained on the ground that it was right and proper to take into consideration the insult to the plaintiff's wounded and outraged feelings, and it was expressly held that exemplary damages were not recoverable in such action.

No adjudicated case has been cited by counsel for the appellant in which the distinction claimed to exist and which we have been discussing has been recognized or expressly adopted, except *Johnson v. Wells, Fargo & Co.*, 6 Nevada, 224, and believing the decided weight of authority is opposed to the view taken in that case, we are unwilling to .follow it and by so doing ignore the other authorities cited.

V. It is urged that the damages are excessive, and ": appear to have been given under the influence of passion or prejudice." The actual injuries received, including loss of time and expense incurred, while considerable, will not warrant the amount found by the jury.

It is difficult to estimate the amount of the recovery for pain and suffering, either of body or mind, and we have rarely interfered with verdicts of this character. Each case, however, must be governed and controlled by the particular facts and circumstances. No general rule applicable to all cases can be adopted, unless it be that whatever the verdict may be it must stand and cannot be in any manner disturbed, however much it may strike the mind as having been given under the influence of "passion or prejudice;" and certainly no such rule as this will for a moment be insisted on. An examina-

tion of the testimony in this case satisfies us that the amount allowed by the jury is greatly in excess of what it should have been, and that the amount of the verdict is the result of "passion or prejudice." So feeling, we should be derelict in our duty, besides disregarding the provision of the statute, if we declined to interfere.

If the plaintiff, within thirty days from the filing of this opinion, sees proper to accept a judgment for seven thousand dollars, there will be an affirmance and judgment entered here, otherwise there must be a reversal.

Justice BECK does not concur in the conclusion reached as to the reduction of the verdict on the ground that he does not think the verdict indicates either passion or prejudice.

DAY, J., *dissenting.*—I do not concur in so much of the foregoing opinion as holds that outrage and indignity, resulting in mental suffering, constitute an element of compensatory damages. In my opinion, mental suffering arising from such cause should be considered only when the circumstances are such as to warrant exemplary damages. I have neither time nor inclination to set forth my views upon this queston; nor, as my brothers all entertain a different view, would any practical purpose be subserved by doing so. There is a conflict of authority upon the subject. None of the cases cited in the foregoing opinion discuss the question elaborately, or sustain the view maintained, with any great cogency of reasoning. Most of them merely announce it *ex cathedra.* I think the better doctrine is that maintained by the Supreme Court of Nevada in *Johnson v. Wells, Fargo & Co.*, 6 Nevada, 224, and followed by a majority of this court upon the former hearing.

### SUPPLEMENTAL OPINION.

PER CURIAM.—On appeal the judgment of the court below was reversed. Within a day or two thereafter, a *procedendo* was issued by the clerk directing the court to proceed with the case in accordance with the opinion of this court, whereupon the defendant filed a petition and bond in the court below, in strict

6. JURISDICTION: transfer of cause to Federal Court: pendency in State Court.

accordance with the act of Congress, passed in 1875, to remove the cause to the Circuit Court of the United States. Afterward the plaintiff filed a petition for rehearing, whereupon the defendant filed a motion to dismiss the cause.

The Code provides as follows: If a petition for rehearing be filed, the same shall suspend the decision if the court on its presentation, or one or more of the judges if in vacation shall so order, in either of which case such decision shall be suspended until the next term. Sec. 3201.

Such order as contemplated in the preceding section was made. The rules of this court provide, that petitions for a rehearing must be filed within sixty days after the decision is made.

At the time the *procedendo* was issued, and the petition and bond for the transfer to the Circuit Court of the United States was filed in the court below, and also, at the time the transcript was filed in said Circuit Court no petition for a rehearing had been filed, but such petition was filed and was pending at the time the motion to dismiss was made, and the question now is whether the proceedings aforesaid have deprived this court of power to proceed farther in the case. As we understand the act of Congress, no cause can be transferred to the Circuit Court of the United States, while the cause is pending in the courts of last resort in the several States. Inasmuch as the petition for a rehearing was filed sixty days from the decision, we hold that the cause was still pending here, and the motion must be

OVERRULED.