## THE STATE v. GRIFFIN, *Appellant.*

1. Criminal Law: GRAND JURY. The Supreme Court will not reverse a judgment because the record fails to show that the grand jury which found the indictment was selected and summoned according to law.

2. Indictment: FAILURE TO INDORSE MATERIAL WITNESSES THEREON. The objection that the names of all the material witnesses for the state, are not indorsed on the indictment, should be raised by a motion to quash the indictment.

3. Self Defence. An instruction on the question of self defence approved.

4. Criminal Law: FLIGHT OF ACCUSED. The flight of one charged with crime is a circumsance tending to prove guilt, and should be considered by the jury and an instruction of the court to that effect is proper.

5. ———: INSULTING EPITHETS: ASSAULT. Insulting epithets or opprobrious words will not justify an assault.

6. ———: NEW TRIAL: NEWLY DISCOVERED EVIDENCE. Newly discovered evidence which is cumulative in its character affords no ground for a new trial.

7. Criminal Practice: REMARKS OF COUNSEL FOR STATE. Certain remarks of counsel for the state in his closing argument to the jury held to afford no cause for a reversal of the judgment.

8. ———: PROSECUTING ATTORNEY, INABILITY TO ACT: APPOINTMENT IN PLACE OF. The appointment by the court of four attorneys to prosecute a defendant on a criminal charge, where the prosecuting attorney was disqualified to act, by reason of having been of

counsel for defendant, condemned as improper practice, although held not to be reversible error.

*Appeal from Christian Circuit Court.*—HON. W. F. GEIGER, Judge.

AFFIRMED.

*J. M. Patterson* and *T. J. Gideon* for appellant.

(1) The record fails to show that the grand jury was chosen and selected according to law, and the judgment for this reason should be reversed. R. S., 1879, secs, 2784-5. (2) The names of all the material witnesses for the state were not indorsed on the indictment. R. S., 1879, p. 304, sec. 1802. (3) The trial court erred in not permitting the witness, Adolphus Hooper, to answer the several questions asked by defendant on cross-examination. (4) The fourth instruction for the state is meaningless, and was calculated to mislead and confuse the jury. (5) The seventh instruction for the state is error, for the reason it tells the jury they should consider certain evidence. (6) The ninth instruction for the state is too brief, and does not tell the jury what words spoken by Conroy would be sufficient for the defendant to act upon. (7) The tenth instruction for the state was not based upon any testimony in the case. (8) The eleventh instruction for the state was not based upon any testimony in the case and only helped to confuse and mislead the jury. (9) The instruction, defining the punishment for murder in the second degree, should not have been given, for the reason it was coaxing the jury to find a· verdict that was not warranted by the evidence in the case. (10) The court erred in not giving the three refused instructions asked by the defendant. (11) The court erred in permitting the trial of the defendant to proceed without a prosecuting attorney to

conduct it for the state; if the prosecuting attorney was absent, sick or disqualified to act, it was the duty of the court to appoint a suitable person as such, under section 519, Revised Statutes, 1879, page 82, and it was error to permit S. H. Boyd, J. J. Gideon, F. S. Heffernan and T. J. Delaney to appear and prosecute for the state. (12) The remarks of F. S. Heffernan in his closing argument for the state were improper. (13) The court should have granted a new trial because of newly discovered evidence.

*B. G. Boone*, Attorney General, for the state.

(1) There is nothing in the record to indicate that the grand jury was not drawn, summoned and empanneled in strict conformity with the statute. Statutes in relation to the summoning and empanneling of juries are directory. A strict compliance with their provisions is not necessary. *State v. Knight*, 61 Mo. 373; *State v. Ward*, 74 Mo. 253. The objection that a grand jury has not been drawn and summoned according to law, comes too late when made for the first time in a motion for a new trial *State v. Jones*, 61 Mo. 232; *State v. Ward*, *supra; State v. Greenwood*, 5 Porter, 474; *State v. Leaben*, 4 Dev. 305. It is too late to raise the objection for the first time in the appellate court. *Bass v. State*, 37 Ala. 469; *Floyd v. State*, 80 Ala. 511; *Huling .v. State*, 17 Ohio (N. S.) 538. (2) The objection urged by defendant in his brief that the names of all the material witnesses for the state were not indorsed on the indictment will not be considered by this court. This objection must be raised by a motion to quash the indictment. This was not done, nor was the error complained of, referred to in the motion for a new trial. No motion in arrest was filed. *Vide*, *State v. Roy*, decided February 3, 1885, 20 C. L. J. 157. Adolphus Hooper was one of defendant's witnesses. The objection that defend-

ant was prejudiced, because he was not permitted to cross-examine this witness is absurd and meaningless. (3) The fourth instruction given by the court in regard to self-defence is a correct declaration of law and has repeatedly been approved. 2 Whar. Cr. L., sec. 1026; *State v. Eaton,* 75 Mo. 591; *State v. Umfried,* 76 Mo. 408; *State v. Shippey,* 10 Minn. 223; *People v. Sullivan,* 3 Selden (N. Y. Ct. App.) 396. (4) The seventh instruction given in regard to the flight of defendant after the homicide, is in harmony with instructions heretofore approved by this court on the subject. *State v. Williams,* 54 Mo. 170; *State v. Mallon,* 75 Mo. 355; *State v. King,* 78 Mo. 557. (5) The ninth instruction, given in regard to insulting words used by the deceased, was proper. *Murray v. Boyne,* 42 Mo. 472; 2 Bish. Cr. L. (5 Ed.) sec. 40, and cases cited; Whar. Cr. L. (4 Ed.) sec. 985; *State v. Wood,* 1 Bay, 351; *State v. Fuentes,* 5 La. An. 427. (6) The tenth instruction given was authorized by the evidence. (7) The eleventh instruction given was also supported by the evidence. The instructions asked by defendant were properly refused by the court. The instructions given covered every phase of the case presented by the evidence, and the court was not required to give additional instructions, although they were correct. (8) Defendant's objection that F. S. Heffernan and others were not authorized to appear for the state in the absence of the prosecuting attorney is merely technical and without merit. The record discloses the fact that the prosecuting attorney was unavoidably absent, and that Heffernan and others "were permitted to prosecute for the state in this behalf." This was a sufficient compliance with section 519, Revised Statutes. (9) The remarks of the attorney alleged as error were not calculated to prejudice defendant, and he cannot complain. *State v. Stark,* 72 Mo. 37; *State v. Hoffman,* 78 Mo. 256. (10) The alleged newly discovered evidence would have constituted no defence, was merely cumula-

tive and the motion for a new trial was properly over-ruled. Besides it is not shown that any effort was made to procure the attendance of the witness at the trial.

HENRY, C. J.—The defendant was indicted in the Greene circuit court for the murder of one John Conroy, in February, 1883. On his application a change of venue was awarded to Christian county and the cause was tried at the August term, 1883, of the Christian circuit court, and resulted in the conviction of defendant, and his sentence to the penitentiary for a term of fifty years. From that judgment he has appealed.

The first point made, and here for the first time made, is that the record does not show that the grand jury which found the indictment was chosen and summoned according to law. Sections 2784 and 2785 of the Revised Statutes of 1879, are not materially different from the provisions of the act of the General Assembly approved March 15, 1873, on the same subject, which, in the *State v. Pitts*, 58 Mo. 556, and *The State v. Knight*, 61 Mo. 373, were held to be merely directory, and on the authority of these cases, this question must be ruled against the appellant.

The objection that the names of all the material witnesses for the state were not indorsed upon the indictment came too late. It should have been made on a motion to quash the indictment. *State v. Roy*, 83 Mo. 268.

Another alleged error is that the court refused to permit the accused to show, by cross-examination of one Hooper, that the witness had been in places in Springfield, where there was gambling, in company with Conroy, the deceased, and also that witness had played cards in Springfield, and who was present. It was wholly immaterial whether the witness or Conroy played cards or not. Their innocence or guilt of any other crime was not in issue in this cause.

The instruction given by the court, number four, is complained of as meaningless and misleading. It declares that: "A danger existing only in the imagination of the accused will not excuse or justify the killing of Conroy. There must have been an apparent danger, affording a reasonable ground for apprehension, on the part of defendant, that unless he killed, or disabled Conroy, his own life or limbs were in imminent peril. Whether the appearances of danger to the accused were such as to afford such reasonable ground of apprehension, is a question for the jury." We see no objection to the instruction.

It is objected to the seventh instruction that it tells the jury they should, in connection with other facts in evidence in the case, in determining his guilt, or innocence, consider the fact, if found, that after he killed Conroy defendant fled or concealed himself. The flight of the party accused is a circumstance tending to prove guilt and should be considered by the jury, and we see no impropriety or error in giving the instruction complained of. The objection urged to the ninth instruction is its brevity. We have not had the pleasure of considering many instructions of which this complaint could be made. The one in question is to the effect, that insulting epithets, or opprobrious words, would not justify an assault. That is a correct proposition of law, and the instruction is commendable for the few words employed to announce it. The tenth instruction, it is alleged, is not based upon any testimony in the case. Counsel have overlooked the testimony of Patterson, who testified that the accused told him that he threw his pistol in Peacher's face, and told him to let him go. It is also contended that there was no evidence upon which to predicate the eleventh instruction, which related to the right of Conroy to carry a pistol. It was wholly immaterial whether he had or not. The question was, did he attempt to use it against the defendant. If in

violation of law he carried a concealed weapon he might have been prosecuted and convicted for it; but it did not constitute him an outlaw whom any one could kill with impunity. The instruction defining murder in the second degree was warranted by the evidence. The refused instructions, so far as they contained proper declarations of law, were embraced in those given by the court.

The newly discovered evidence upon which defendant asked a new trial was cumulative evidence. That a pistol was found on the floor of the saloon, soon after Conroy was killed, and was handed to the saloon keeper by Blackburn, whose affidavit was filed with the motion for a new trial, was testified to by the saloon keeper, and no reason is shown why the defendant, or his attorneys who learned what the saloon keeper would testify to, did not ascertain from him who gave him the pistol. Peacher, the saloon keeper, made an affidavit which was also filed, stating that he did not, when he testified in the cause, know the name of the person who picked up the pistol from the floor, and handed it to him, but had since learned his name to be Jno. Blackburn. He does not say he did not know the man but did not know his name. Blackburn is a colored man, and made an affidavit for the state in which he stated that he saw no pistol on the floor, after Conroy was killed, while Conroy lay there. That he found one afterwards while sweeping up the room, lying behind the door. Also that he had known Peacher for three or four years and that Peacher knew him well by name. That he traded with him and that Peacher always recognized him on the street. That affiant had lived in Springfield, where the killing occurred, for several years and was seldom absent from the city, and never more than two consecutive days within that time

The court did not err in refusing defendant a new trial, on such affidavits as the two made by Blackburn,

and the one made by Peacher. If they constitute a sufficient foundation for a new trial, a criminal prosecution might be interminable.

The remarks made by Mr. Heffernan, in the closing argument for the state, certainly afford no ground for a reversal of the judgment. They were as follows: "The sheriff of Greene county, Missouri, had often entrusted the deceased with the most important business, that he had a mother only fifteen miles away, that she had abandoned him, she is not here to share his troubles, and the only question for you, gentlemen of the jury, to decide is whether law and order shall prevail in this community, or whether the defendant, this murderer, shall be punished." I suppose there can be no doubt that Conroy had a mother, but I am unable to see how that fact, or the other facts (that she lived fifteen miles from Springfield and had abandoned the deceased, and *was not at Springfield to* share his troubles), could have prejudiced the accused, if Mr. Heffernan had for hours harangued the jury on those wholly immaterial facts. In calling the defendant a *murderer*, he only pronounced him, what his whole argument must have been devoted to in an attempt to demonstrate him to be, and while I think it would be in better taste to abstain from the use of such epithets, we cannot reverse the judgment because the attorney called the accused what the evidence for the state tended to prove him to be.

We come now to an alleged error which presents a question of more difficulty. The prosecuting attorney of Christian county, where the cause was tried, having been of counsel before his election, could not conduct the prosecution. The prosecuting attorney of Greene county had not followed the cause to Christian. The statute, section 518, provides as follows: "If the prosecuting attorney or assistant prosecuting attorney, be interested, or shall have been employed as counsel in any case which it shall be his duty to prosecute or de-

fend, the court having criminal jurisdiction may appoint some other person to prosecute or defend the cause." Section 519 provides that "If he be sick, or absent, such court shall appoint some person to discharge the duties of the office, until the proper officer resume the discharge of his duties." In the case at bar, the record discloses the fact, that the prosecuting attorney of Christian county had been employed in the case, and that S. H. Boyd, J. J. Gideon, F. S. Heffernan and T. J. Delaney "were permitted to prosecute for the state in this behalf." The first of the above sections does not contemplate the appointment of one as a *prosecuting attorney*, a state officer, who is to take the oath of office and be invested with the same authority in the case, as is possessed by the prosecuting attorney *pro tem.*, appointed under section 519. He is simply appointed to prosecute or defend. Here the four attorneys were *permitted* to prosecute, and were in, effect, *appointed* to prosecute. It would look more like a prosecution, and less like persecution, if the court had appointed one reputable attorney, either of the four, to prosecute the accused instead of making an order appointing or permitting four able attorneys, all probably retained by the friends of the deceased, to represent the state in the prosecution of the cause. It is a practice which should not prevail, and, while we do not hold it reversible error, we cannot refrain from expressing our disapprobation of the practice.

While the statute does not authorize the appointment of a prosecuting attorney in the place of the regular prosecuting attorney, who shall have been employed as counsel in the case, it does contemplate the appointment of an attorney to prosecute the cause, and he should be one, not acting under the stimulus of a retainer, but standing unbiased, representing the state, and as ready and willing to protect the accused, if innocent, as to labor for his conviction if guilty of the

charge. *This we regard as the duty of a prosecuting attorney.* Nothing in the record shows that the *four attorneys* appointed were previously retained to prosecute the defendant. It is merely an inference, and it may be that it is not true. No objections were made to the order permitting them to prosecute. We have discovered no error in this record, which would warrant a reversal of the judgment, and it is, therefore, affirmed.