CHRISTIAN F. HAMAN v. THE OMAHA HORSE RY. CO.

[FILED JUNE 30, 1892.]

1. **Assault:** WORDS OF PROVOCATION alone will not justify an assault, although they may constitute a ground of mitigation of damages.

2. ———: STREET RAILWAYS: IN EJECTING A PASSENGER from the street car the conductor can use no more force than is necessary for that purpose, and if he do so the company will be liable.

3. ———: MEASURE OF DAMAGES. The rule as to the measure of damages as stated in the tenth paragraph of the instructions in *McClure v. Shelton*, 29 Neb., 374, 375, approved.

ERROR to the district court for Douglas county. Tried below before HOPEWELL, J.

*C. A. Baldwin*, for plaintiff in error:

The company is liable for the act complained of (*McKinley v. R. Co.*, 44 Ia., 314; *Goddard v. R. Co.*, 57 Me., 202; *Hanson v. R. Co.*, 62 Id., 84; *Bryant v. Rich*, 106 Mass., 180; *N. W. R. Co. v. Hack*, 66 Ill., 238; *Craker v. R. Co.*, 36 Wis., 657; *Smith v. R. Co.*, 23 O. St., 10; *Rounds v. R. Co.*, 64 N. Y., 129; *Peck v. R. Co.*, 70 Id., 587; *Shea v. R. Co.*, 62 Id., 180.)

*Geo. E. Pritchett, contra:*

If the assault was as claimed, the defendant is not liable, because the same was a willful trespass and entirely outside the driver's employment. (*McManus v. Crickett*, 1 East Term [Eng.], 106; *Isaacs v. R. Co.*, 47 N. Y., 123; *Towanda Coal Co. v. Heeman*, 86 Pa. St., 418; *Coleman v. R. Co.*, 106 Mass., 174.) A new trial may not be granted on account of the smallness of damages. (*Shoff v. Wells*, 1 Neb., 168.)

MAXWELL, CH. J.

This is an action to recover for personal injuries inflicted upon plaintiff by one of defendant's employes, who at the time was in charge of one of defendant's cars, as driver and conductor thereof, and upon which car plaintiff had taken a seat as a passenger thereon, his fare having been paid by a fellow passenger. The plaintiff says that after he had so taken a seat in defendant's car, and after his fare was so paid, the driver demanded of plaintiff that he personally pay a fare, over which demand some words were had between them, and the plaintiff threatened to report the driver and his conduct to the superintendent of the railway; that thereupon the driver made an assault upon the plaintiff, striking him with great force while plaintiff was so seated in the car, and at the same time shoving plaintiff's head through the glass of one of the windows of the car; that plaintiff undertook to and did leave the car, and the driver followed him for quite a distance from the car, pounding plaintiff with a club until he was stopped by some laborers near by. And he says that the assault so made upon him, and the injuries inflicted, caused him great pain of body and mind, and disgrace and humiliation, for which he asks judgment for damages. The defendant in its answer denies the assault and battery, and at the same time pleads justification for the conduct of its driver. On the trial, the jury returned a verdict in favor of the plaintiff for the sum of ten cents, upon which judgment was rendered.

There is but little conflict in the testimony, except upon the point whether the plaintiff used any abusive language to the driver. The plaintiff was the inspector of paving and curbing and other public improvements in the city of Omaha, and he, with Mr. Fox, a contractor, entered the Cuming street car at the turn-table on Thirty-sixth street. He testifies:

Mr. Fox stepped on the car first and I followed him. He walks up before sitting down—up to the box—and puts in some money, whatever it was I could not swear, but he put in some money. I took my nickel out and followed him right up and when I come to put it in he says, "Hold on, I paid your fare." So we both walked back and sat down. I sat on the rear end next to the door and Mr. Fox sat right next to me on the south side. So the driver stopped by that time his car, and he ties his lines and he comes in and sat down and talked to a girl who brought up a little bit of a girl about fifteen years of age probably, and he had some conversation with her that was not very decent for a driver in a car. There was another lady with a child of about twelve or thirteen years in there, but there was nothing said about it until he finally drove off.

Q. Which way did he drive?

A. He went east. Then he came down about to where the switch was at that time—there is a double track now—about Thirty-third street. I said to Mr. Fox, "Are you sure you paid my fare?" Then he says, "Do you think I would tell you if I didn't?" I says, "He is ringing the bell for somebody." Well, we sat a little while longer and he rang the bell again. Then he went up,—Mr. Fox went up and had some talk with him—the door was open, and he had his head on the outside towards the driver. What he talked—the first part—I could not hear it; but finally he came in and he took out another dime. He says, "Here is another dime, I will put that in, and after looking in the box to see if it is in there so you will be sure about it." That was all that was said, and he came back and sat down, and he put the dime in the box and the driver satisfied himself it was in the box. Then he came back and sat down. I says, "Did you pay for both of us?" He says, "Yes." He says, "He denies that I paid anything at all." So I walked up to the driver. I says, "You deny that man

paid you any money when he got on the car?" He says, "Yes, neither you or him." I says, "I know I did not, but that man paid you some money." He says, "No, he didn't." I says, "I know better; I am going to report you to Mr. Smith as soon as I get down town." That is all I said, and went back and sat down. He says, when I walked back, "I do not give a damn for you or Smith; I am running this car; it is all right."

In this he is corroborated by the testimony of Mr. Fox. Their testimony clearly shows that upon entering the car Mr. Fox deposited ten cents in the box for himself and the plaintiff. The driver, however, insisted, after starting the car, that they had not paid, and, apparently to avoid any difficulty, they paid a second time. There is no doubt this is the case.

The driver was called as a witness on behalf of the company and testified as follows:

Mr. Fox came out to the front of the car to me and asked if I was ringing for him. I said, "Yes, put your fare in the box." "Well," he says, "we have paid our fare." "No, sir," I says, "you did not." I guess he forgot all about it. Well, he went back in and did not say a word. He went back and spoke to the other gentleman behind, and he came in to the front of the car and he says to me, he says: "You son of a bitch, I will report you to Smith, and he dropped a dime in the box."

Q. This man here?

A. Yes, and then he went back and sat down in the southwest end of the car and Fox stood on the rear platform. There were three ladies in the car and a child at the time and I stopped the car and went back and told them they could not speak such language as that in the car in the presence of ladies, they could not ride here and do that. I says, "Get out of here." So I took them by the collar of the coat or the vest rather, and was taking him out on the back platform of the door, by the collar, when he hit

me on the nose, and Mr. Fox was standing on the platform also, and he hit me in the back of the head, so I pulled both of them out in the street, both of them, and we got in a fuss on the street.

Q. Did Fox sit down in the car at all on the trip?

A. No, sir.

Q. I understood you to say that he had put no money in the box at all? ·

A. No, sir, he did not.

Q. And it was Haman here, the plaintiff here, who put the ten cents in the box after Fox had been up and talked with you about paying fare.

A. Yes, sir.

On his cross-examination he states that the plaintiff called him the objectionable name but once in the car; that he then deposited ten cents in the box and then took his seat; that he remained in his seat "it might be five minutes," when he went into the car and commenced the assault on the plaintiff. A number of witnesses testify that he forcibly ejected both the plaintiff and Fox from the car and struck the plaintiff in the face and followed the plaintiff some distance from the car and struck him with a club, and when remonstrated with by a number of gentlemen who were on the sidewalk, he answered, "Go on about your business or I will give you some." It appears that the same driver, but a short time before, at a point on Cuming street, where a sewer was being constructed and the street consequently obstructed, drove his car in such a manner as to nearly precipitate two members of the board of public works into a sewer, and when remonstrated with by the parties who had just escaped injury, he told them to go to hell. Complaint was made to Mr. Smith, the superintendent, who it seems did not suspend the driver for even a single day, but required him to apologize to the gentlemen who had been insulted, and ask their forgiveness, which, on a promise of better conduct in the future,

was freely granted.    The company therefore was apprised of the character of this man, if such notice was necessary.

On the trial the court instructed the jury as follows: "You are further instructed, however, that if you believe from the evidence that the driver, Ed. Kogan, assaulted the plaintiffs, yet, if you further believe from the evidence that the plaintiff invited and provoked such assault, by using profane, vile, and abusive language toward said Kogan, and that the assault and beating complained of were in resentment of such language and caused by it, then in that event you are instructed that the defendant is not liable in damages on account of injuries received by plaintiff under such circumstances, and your verdict should be for the defendant."    This instruction is clearly erroneous.    All the authorities agree that words of provocation alone will not justify an assault. (*Sorgenfrei v. Schroeder,* 75 Ill., 397; *Ogden v. Claycomb,* 52 Id., 366; *Donnelly v. Harris,* 41 Id., 126; *State v. Griffin,* 87 Mo., 608; *Collins v. Todd,* 17 Id., 537; *State v. Wood,* 1 Bay [S. Car.], 351; *Winfield v. State,* 3 Greene [Ia.], 339; *Birchard v. Booth,* 4 Wis., 67; *Mitchell v. State,* 41 Ga., 527; *Suggs v. Anderson,* 12 Id., 461; *Lee v. Woolsey,* 19 Johns. [N. Y.], 319; S. C., 10 Am. Dec., 230; *Avery v. Ray,* 1 Mass., 12; *Cushman v. Ryan,* 1 Story [U. S.], 91; 1 Am. & Eng. Encyc. of Law, 803.)    Where, however, the provocation is recent, it may be shown in mitigation of damages.

Second—But even if the driver had been justified in removing the plaintiff from the car, he would not be protected in using a greater degree of force than was apparently reasonably necessary, and if he did so the company would be liable.    In this case the driver's own testimony shows that his conduct was brutal in the extreme, and is not justified by anything that appears in the record.

Third—The court failed to instruct clearly on the measure of damages.    In *McClure v. Shelton,* 29 Neb., 374, 375, this court approved an instruction as to the measure

of damages in case of assault and battery, which, in the main, is applicable to a case like this, with the addition that the party is entitled to compensation for the humiliation of a forcible and violent expulsion from the car. It is not disputed that the company is liable for the acts of its employes in a case of this kind, and if it were, there is no doubt of such liability. (*McKinley v. C. & N. W. R. Co.*, 44 Ia., 314; *Goddard v. Grand Trunk R. Co.* 57 Me., 202; 62 Id., 84; *Bryant v. Rich*, 106 Mass., 180; *N. W. R. Co. v. Hack*, 66 Ill., 238; *Craker v. C. & N. W. R. Co.*, 36 Wis., 657; *Smith v. P. & Ft. W. & C. R. Co.*, 23 O. St., 10; *Rounds v. Del. R. Co.*, 64 N. Y., 129; *Peck v. C. R. Co.*, 70 Id., 587; *Shea v. Sixth Ave. R. Co.*, 62 Id., 180.) The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.